CATHARINE B. PRICE, Appellant, *v.* WALTER W. PRICE, Respondent.

An action to recover damages for alleged fraud on the part of defendant, in that he induced plaintiff to marry and to cohabit with him by means of false and fraudulent representations that his first wife was dead, and that he was in all respects competent to marry, does not survive; and upon the death of defendant, cannot be revived against his personal representatives.

The action is for injury to the person of the plaintiff, and its character is not changed by an allegation in the complaint that defendant " promised, undertook, covenanted and warranted that he had the right and was in all respects competent to marry."

Nor is its aspect changed by allegations that defendant was a man of wealth, and that he instituted an action against plaintiff and procured a judgment annulling their marriage upon the ground that his former wife was living; the judgment being the act of the law no legal wrong was done to plaintiff in procuring it.

(Argued November 12, 1878; decided November 19, 1878.)

·APPEAL from order· of the General Term of the Supreme Court, in the second judicial department, affirming an order of Special Term denying a motion on the part of plaintiff to substitute the executors of defendant in his stead, he having died since the commencement of the action, and to revive the action against them. (Reported below, 11 Hun, 299.)

The nature of the action appears in the opinion.

*John L. Hill,* for appellant. The relation of the parties prior to the decree against plaintiff was that of husband and wife under a valid marriage. (2 R. S., *139, §§ 5, 6, art. 1, title 1, chap. 8; 5 N. Y. Stat. at Large, 400, note; *Williams* v. *Parisien,* 1 Johns. Ch., 392; *Vallean* v. *Vallean,* 6 Paige, 209; *Brower* v. *Bower*, 9 Leg. Obs., 196; *Cropey* v. *McKinney,* 30 Barb., 55; *Griffin* v. *Banks,* N. Y. G. T., 24·How. Pr., 214; *White* v. *Lowe,* 1 Redf., 376; *Myles* v. *Gibbs,* id., 382; 2 Scribner on Dower, p. 1–3; 1 Bishop on M. & D.; *Rex* v. *Jacobs,* 1 Moody, 140.) The decree

annulling this marriage was not retroactive. Its whole effect was in the future. (*Griffin* v. *Banks*, 37 N. Y., 621; 1 Bishop on M. & D., § 118; 2 id., § 690.) This marriage gave plaintiff a valid and subsisting interest, if not an estate, in and against the defendant's property. (*Griffin* v. *Banks*, 37 N. Y., 621; 1 Bishop on M. & D., § 116; 4 Kent's Com., 36; *Miller* v. *Voorhees*, 20 N. Y., 412; *Simmar* v. *Kennedy*, 53 id., 304; *Douglas* v. *Douglas*, 11 Hun, 406; *Swaine* v. *Perine*, 5 John. Ch., 482 ; *Perine* v. *Dun*, 3 id., 515 ; *Luther* v. *Smith*, 4 Wash. C. C.; *Smith* v. *Smith*, 2 Halst., 515; *Petty* v. *Petty*, 4 B. Munroe, 215; *Young* v. *Young*, 1 Sup. Ct. R.) A warranty of marriageable capacity where the agreement is executed and results in such marriage is an ante-nuptial agreement in contemplation of marriage and continues after the marriage. (Laws ·1849, chapter 375, § 3; 4 N. Y. Stat. at Large, 514.) This action was not *ex delicto*. (*Austin* v. *Rawdon*, 44 N. Y., 63, 70; *Connaughty* v. *Nichols*, 42 id., 83; *Graves* v. *Wait*, 59 id., 156; *Freer* v. *Denton*, 61 id., 492; *Vilmar* v. *Schall*, id., 564.) The law will imply a promise in this case to make reparation for the injury done. (2 Bishop on M. & D., § 690; 2 Story's Eq. Jur., § 1255; *Norton* v. *Coons*, 3 Den., 130, 134; *Poor* v. *Guilford*, 10 N. Y., 273, 276; *Sherman* v. *Sheldon*, 42 id., 484; *Byxbie* v. *Wood*, 24 id., 610.) Upon legal principles and analogies the gist of the action is an injury to property, to pecuniary rights and interests. (*Cregin* v. *Crosstown R. R. Co.*, City Court of Brooklyn ; *Fried* v. *N. Y. C. R. R.*, 25 How. Pr., 286–287; *Zabriskie* v. *Smith*, 13 N. Y., 322; *Haight* v. *Hoyt*, 19 id., 474.)

*Charles Hughes*, for respondents. This action was *ex delicto* and did not survive the death of the defendant and was not assignable. (2 Hun, 611; *Ross* v. *Mather*, 51 N. Y., 168; *De Graw* v. *Elmore*, 50 id., 1; *Wade* v. *Kalbfleisch*, 58 id., 282; *People* v. *Tioga C. B.*, 19 Wend., 73; *Butler* v. *N. Y. and E. R. R.*, 22 Barb., 116; *Meech* v. *Stoner*, 19 N. Y., 29; *Chamberlain* v. *Williamson*, 2 Maule & Selw.,

408; *Hodgman* v. *West. R. R. Co.*, 7 How. Pr. R., 492; *Freid* v. *N. Y. C. R. R. Co.*, 4 Duer, 74; 29 Georgia, 61; 5 Abb. [N. S.], 331; 2 Bosw., 277; *Zabriskie* v. *Smith*, 3 Kernan, 332–336; *Hyslop* v. *Randall*, 4 Duer, 660; *Lampshire* v. *Hall*, 26 How. Pr. R., 509; *Read* v. *Hatch*, 19 Pick., 47; 3 Kernan, 322; 22 Barb., 110; 25 How. Pr., 285; 14 Abb., 178; 58 N. Y., 286.)

EARL, J. The defendant named in the complaint died after the action was at issue, and a motion was then made to substitute his executors in his stead, and to continue the action against them. The executors have thus far successfully resisted the motion on the ground that the cause of action alleged in the complaint did not survive against them, and whether it did so survive is the sole question for our determination.

It is alleged in the complaint that the defendant was in 1839 married in England, to Susannah Butler, and that after living with her for a short time, they separated, and he came to the United States; that in 1843, he was again married, in this State, to Caroline Juliet Barton, and lived with her until 1860, when they separated; that in 1863, he commenced an action against her to have his marriage with her declared null and void, on the ground that his first wife was living at the time of such marriage, and was still living, and he obtained a judgment, annulling such marriage; that by his procurement a clause was inserted in such judgment, whereby he intended to cause the plaintiff to believe that he was by that judgment, or as one of its results, made competent to marry again; that before the entry of such judgment, the plaintiff knew the defendant, and entertained for him great personal confidence and esteem, and he had informed her that he had been married in England, and that his first wife went to Australia not long after he came to this country, and died there, and that she believed him; that after the entry of such judgment, the defendant stated to her that he had finally discovered that the said Caroline was a bad

woman, and that on that ground he had obtained the judgment of divorce from her, and "represented, promised, undertook, covenanted, and warranted, that he had the right, and was in all respects competent to marry again, thereby intending to have her believe that such marriage if consummated with defendant would be valid to all intents, and purposes," and thereupon solicited the plaintiff to marry him, and in confirmation of his representations exhibited to her a paper purporting to be the judgment aforesaid, containing the clause aforesaid, and that the plaintiff relying upon all this agreed to marry him, and did subsequently marry him, and live with him until 1871, bearing him three children.   The complaint then alleges that the said "statements, representations, promise, undertaking, covenant, and warranty were not true, for the reason that the said Susannah Butler then was, and now is alive," and that the defendant was incompetent to enter into a valid marriage with her ; that afterward the defendant, taking advantage of the wrong he had thus done her, abandoned her, and commenced an action against her to annul his marriage with her, on the ground that the said Susannah Butler was living at the time of such marriage and was still living, and obtained judgment annulling such marriage, and that the said acts of the defendant, "were done with intent to cheat and defraud her." She also alleged that the defendant was worth upwards of a $1,000,000, a large portion of which was in real estate, and she prayed judgment for $100,000.

The right to maintain this action cannot be based upon anything that transpired after the marriage.   It is not alleged that he prosecuted the action to annul the marriage fraudulently, and the facts that he did prosecute the action, and refused longer to live with the plaintiff, could not of themselves give her a right of action.   If the action could otherwise be maintained, then his conduct, and the facts that transpired after the marriage, might be proper elements in estimating the amount of damage to be awarded her.

This action may be revived against the executors if the

cause of action survives, and to ascertain whether it does survive we can look only to our statutes. It is provided in the Revised Statutes (2 R. S., 113) that "actions of account and all other actions upon contract may be maintained by and against executors in all cases in which the same might have been maintained by or against the respective testators." It was decided in *Wade* v. *Kalbfleisch* (58 N. Y., 282), that a contract of marriage was not a contract within the purview of this statute, and that an action for breach of promise of marriage did not survive. So far as the complaint in this action can be claimed to allege a contract, it is a contract of marriage. It is true that it alleges that the defendant "promised, undertook, covenanted and warranted, that he had the right and was in all respects competent to marry." These allegations do not alter the character of the action. What is thus alleged is implied in every promise of marriage, to wit, that the promissor has the right, and is competent to marry. The promise could not be kept by one not competent to marry, and a mere form of marriage, void, or voidable at the election of the promissor, would not satisfy the promise. Hence if this be regarded as an action upon the contract of marriage, it must be controlled by the case above cited, and it is not removed from the control of that case because a form of marriage followed by cohabitation was celebrated.

But the better construction of this complaint is that it is an action purely for a wrong in inveigling the plaintiff by false representations and deceit, into a void, or voidable marriage, followed by several years of cohabitation. A great wrong was doubtless thus done the plaintiff for which, if the defendant had not died, she might have recovered. But there is no statute by virtue of which an action for such a wrong survives. It is provided by sections one and two in 2 Revised Statutes, 448, as follows :

" § 1. For wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the

person injured, or after his death by his executors or administrators, against such wrong-doer, and after his death against his executors or administrators, in the same manner and with the like effect in all respects as actions founded upon contracts."

"§ 2. But the preceding section shall not extend to actions for slander, for libel, or to actions of assault and battery, or false imprisonment, nor to actions on the case for injuries to the person of the plaintiff, or the person of the testator or intestate of any executor or administrator."

It has been decided that wrongs mentioned in the first section are such only as injure property or estate. (*Wade* v. *Kalbfleisch, supra; Cregin* v. *Brooklyn and Crosstown R. R. Co.*\*) The wrongs alleged here are merely personal wrongs, inflicting injury to the person of the plaintiff, which at common law would have been redressed by an action on the case. They did not affect her property or estate. It does not appear that she ever had any estate. It is true that if the marriage had not been annulled she might have had property interests in the estate of the defendant as his widow. But he had the legal right to institute the action, and obtain the judgment annulling the marriage. That judgment was the act of the law, and he did no legal wrong to the plaintiff in procuring it.

In any aspect therefore, the cause of action did not survive, and the order of the General Term must be affirmed.

All concur.

Order affirmed.

---

\**Ante*, page 192.