[Decided July 22, 1882.]

## RICHARD HOLYOKE *v.* D. B. JACKSON.

HUSBAND AND WIFE — COMMUNITY PROPERTY — HUSBAND'S POWER OF DISPOSITION OVER — DAMAGES. — Subsequent to the act relating to and defining the property rights of husband and wife of 1879 (Sess. Laws 1879, p. 77), a husband cannot enter into a valid contract for the sale of community real property without his wife joining therein. A vendee under such contract, with knowledge or notice of the fact that the subject-matter of the contract was real estate belonging to the community, cannot recover damages for the husband's failure to execute the contract.

ERROR to the District Court holding terms at Seattle. Third District.

In this case, D. B. Jackson brought his action against R. Holyoke, alleging in his complaint that on April 7, 1880, defendant was the owner of certain real estate; that on said day the parties made an agreement in writing, whereby plaintiff bought and defendant sold the property, paying two hundred dollars as part payment, and defendant was to make and deliver a good deed for

the property upon the payment of two thousand eight hundred dollars, being balance of purchase price. The alleged contract was in writing as follows:—

"PORT GAMBLE, April 7, 1880.

"Received of D. B. Jackson $200, to apply on trade,. made this day for lot 1, in block 12, on Front Street, Seattle, for $3,000, to be paid on delivery of deed, ten days from date.          RICHARD HOLYOKE."

The complaint further alleged tender by plaintiff of balance of purchase price, refusal by defendant to execute conveyance, and an offer by plaintiff to perform his contract upon delivery of deed. Plaintiff also alleged damage sustained by defendant's breach of contract, the enhancement of the value of the property between date of contract and time fixed for performance, and other facts showing special damages. Plaintiff prayed for a specific performance of the contract, or for damages sustained by the breach. The defendant, appearing, moved that plaintiff be required to elect whether to pursue his equitable remedy for specific performance, or prosecute his action at law to recover damages. Motion granted, and plaintiff elected to proceed at law. In his answer, the defendant denied the agreement in writing, and denied the sale, except on condition that his wife should consent to the sale; and also denied tender, and all allegations of damages. As an affirmative defense, he pleaded his marriage relations before and ever since 1873 with his wife, now living, the acquisition of the property in 1873 as community property, and the continued ownership of the property as such thereafter, and the refusal of the wife to join in the sale, and immediate notice thereafter to plaintiff of such refusal, and a tender back of the money paid, with interest, which was deposited in court. There was also an allegation that plaintiff knew of the marriage relation at the time of the contract, and that defendant's wife had not consented to the sale, and that the agreement was made upon the condition that she

would consent. Plaintiff in his reply denied the matter set forth in the affirmative defense. There was a judgment for the plaintiff, from which defendant appealed.

*Mr. C. H. Hanford,* for the Plaintiff in Error.

At the date of the alleged contract upon which the plaintiff in the court below sought to recover, the statutes of the territory prohibited the making of any contract by a husband alone for the sale of the community real estate of himself and wife. (Sess. Laws 1879, p. 78, sec. 8; p. 79, sec. 19; 2 Bouvier's Law Dict., p. 91; *Gulick* v. *Ward,* 18 Am. Dec. 403, and note; *Best* v. *Strong,* 20 Am. Dec. 606; *Colleck* v. *Blautem,* 1 Smith's Lead. Cas. 699; *White* v. *Franklin Bank,* 22 Pick. 181; *Barnett* v. *Wendenhall,* 42 Iowa, 296; 2 Parsons on Contracts, 746.) The husband's power to dispose of the community property under the laws of the territory previous to 1879 was a mere power conferred upon him as the head of the family in trust for the family, and is in no sense a vested right of property. (Wade on Retroactive Laws, secs. 157, 178–180; Sedgwick on Construction of Statutes, 644, and note; *Zumpleman* v. *Robb,* 53 Tex. 282; *Wright* v. *Hays,* 10 Tex. 130; *Young* v. *Batle,* 48 Tex. 46; *Johnson* v. *Harrison,* 48 Tex. 257; *Morgan* v. *Yesler,* Wright, 144; *De Mill* v. *Lockwood,* 3 Blatchf. 56; *Lucas* v. *Sawyer,* 17 Iowa, 517; *Studevant* v. *Norris,* 50 Iowa, 65; *Maynard* v. *Valentine,* 2 Wash. 3; *Butler* v. *Pennsylvania,* 10 How. 402, 416.) The defendant in error knew all the facts which render the contract void at and previous to the time it is alleged to have been made, and is therefore *in pari delicto,* and not entitled to any relief. (Pomeroy on Contracts, sec. 395, note 3, 457, 458, 461, 475.)

*Messrs. McNaught, Ferry, McNaught, & Mitchell,* for the Defendant in Error.

At the time of the making of the contract between plaintiff and defendant, and at the time the same should

have been performed, the husband had full power and authority to sell and convey the property embraced in the contract. (Sess. Laws 1873, p. 452, sec. 9; Sess. Laws 1871, p. 71, sec. 14; Sess. Laws 1879, p. 81, sec. 31.) The plaintiff in error had vested rights in the property under the laws of 1871 and 1873 relating to husband and wife, of which he could not be divested by the law of 1879. The *jus disponendi* is a right as sacred and valuable as the *jus habendi*, and cannot be taken away by legislative enactment. (Wade on Retroactive Laws, secs. 178, 179, 183, note 2.)

Mr. Chief Justice GREENE delivered the opinion of the court.

The primary question involved in this case is, whether, subsequent to the husband and wife act of 1879, the plaintiff in error, being a husband, could, without his wife joining, make a valid contract to sell to defendant in error community property. By the provisions of the husband and wife acts passed in 1879, and previously, the husband and wife are considered as constituting together a compound creature of the statute, called a community. This creature is sometimes, though inaccurately, denominated a species of partnership. It probably approaches more nearly to that kind of partnership called *universal* than to any other business relationship known to the civil or common law.

A *conventional* community, in a state where statutes would permit, might be contrived which would be substantially a partnership; but an ordinary *legal* community is, in many important particulars, quite distinct. It is like a partnership, in that some property coming from or through one or other or both of the individuals forms for both a common stock, which bears the losses and receives the profits of its management, and which is liable for individual debts; but it is unlike, in that there is no regard paid to proportionate contribution, service,

or business fidelity; that each individual, once in it, is
incapable of disposing of his or her interest; and that
both are powerless to escape from the relationship, to vary
its terms, or to distribute its assets or its profits.   In
fixity of constitution, a community resembles a corpora-
tion.   It is similar to a corporation in this, also, that the
state originates it, and that its powers and liabilities are
ordained by statute.   In it, the proprietary interests of
husband and wife are equal, and those interests do not
seem to be united merely, but unified; not mixed or
blent, but identified.   It is *sui generis*,—a creature of the
statute.   By virtue of the statute, this husband and wife
creature acquires property.   That property must be pro-
curable, manageable, convertible, and transferable in
some way.   In somebody must be vested a power in
behalf of the community to deal with and dispose of it.
To somebody it must go in case of death or divorce.   Its
exemptions and liabilities as to indebtedness must be
defined.   All this is regulated by statute.   Management
and disposition may be vested in either one or both of
the members.   If in one, then that one is not thereby
made the holder of larger proprietary rights than the
other, but is clothed, in addition to his or her proprie-
tary rights, with a bare power in trust for the commu-
nity.   This power the statute of 1873 chose to lay upon
the husband, while the statute of 1879 thought proper
to take it from the husband, and lay it upon husband
and wife together.   As the husband's "like absolute
power of disposition as of his own separate estate," be-
stowed by the ninth section of the act of 1873, was a
mere trust conferred upon him as member and head of
the community in trust for the community, and not a
proprietary right, it was perfectly competent for the
legislature of 1879 to take it from him and assign it to
himself and his wife conjointly.   This was done.   When,
therefore, in 1880, the plaintiff in error, without his wife,
entered into an agreement to sell the land in question,

he agreed to do what he himself, by himself, could not do, and therefore could not agree to do. To make an actual sale or conveyance without his wife, he had no power. The law says such a thing shall not be done. An agreement proposing it is in conflict with the law, and void. As the defendant in error knew of the marriage, and that the property was community property, he was a participant in an invalid transaction wherein the law charged him with knowledge of the invalidity. He was doing what he is presumed to have known was against the law. So circumstanced, he is entitled to no redress for the failure of plaintiff in error to carry out the void contract to sell.

A second exceedingly interesting question arose in this case, and has been ably discussed upon the argument: it is the measure of damages for a breach of contract to convey lands. Our conclusions upon the other question makes any discussion of this unnecessary to a decision of the cause. We therefore decline to enter upon it.

Let the judgment of the District Court be reversed, and the cause be remanded to that court, with directions to vacate the order setting aside the judgment of nonsuit.

HOYT, J., concurred.

On a motion for a rehearing, the opinion of the court was delivered by Mr. Chief Justice GREENE, as follows:—

Community property was created by a statute of December 2, 1869, although called "common property" by that statute and by the statute of 1873. By the statute of 1879 it was first denominated "community property." The rights referred to in the thirty-first section of the act of 1879 are proprietary rights, and not such naked power of management, control, or disposition as are devolved upon any married person to be exercised in trust

for the community. Therefore, all the provisions of the act of 1879 which operate to create, vary, or assign powers of that description are applicable to property previously acquired. By section 8 of the statute of 1879, the husband is clothed with a certain trust in respect to community real property. The management and control of it is vested in him, not for himself, but for the community. Besides this, he with the wife is endowed with power to dispose of it. This power, too, is in trust for the community, for we must distinguish the community called into existence by the statutes from the two individuals who composed it. By a like distinction, a corporation is conceived to differ from its stockholders. When the husband, therefore, thus situated, undertakes to dispose of the community property as his own, he stands differently from the absolute proprietor of a homestead, who has the power to shift the domicile of his family at pleasure, and who is required to have his wife join, not because she is joint trustee with him, nor because he without her is not owner, but merely as a check on his power of disposition, lest certain consequences follow, injurious to the proper policy of the state. In the matter of disposing of community real property, husband and wife are, by the law of 1879, joint trustees for their mutual benefit in the community. Within the scope of their joint trust, neither can act without the other. No contract of disposition undertaken by either husband or wife, in contravention of his or her fiduciary relation to community real property, can be enforced so as to reach any such property directly or indirectly. And if, at the time of making the supposed contract, the would-be purchaser knows it to be in breach of fiduciary duty, then it is void in every aspect, and cannot be the foundation of any liability whatever.

In the case at bar the supposed contract was made without consulting the wife, without her knowledge, against her will, notwithstanding the defendant well

knew that under the statute she was entitled to and bound to exercise an equal voice and responsibility in the matter with her husband.

Let the motion for a rehearing be denied.

NOTE. — The publication of this case was inadvertently omitted from volume 2 of Washington Reports. — REP.