ROBERT PAYNE'S APPEAL FROM THE DOINGS OF COM-
MISSIONERS.

Third Judicial District, Bridgeport, October Term, 1894. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The existence in fact of the relation of husband and wife, whether accom-
panied by the legal status of husband and wife or not, implies a free
interchange of support and service; and no cause of action in favor of
one against the other for the value of such reciprocal gifts can arise,
unless by virtue of some express agreement.

A man was induced to marry a woman by her false representations that
she was single, and lived with her in conjugal relations until her death,
during all of which time she had a lawful husband living, of which
he was ignorant. *Held* that he could not recover from her estate for
the value of the shelter, food and clothing furnished her. The legal
wrong consisted in securing the void marriage by fraud, an injury
which was complete with the consummation of the marriage. The
expenditures by the supposed husband simply aggravated the damages
caused by such deceit, but the entire cause of action was a tort or
injury to the person, which did not survive against the administrator
or executor of the tort-feasor.

In order that a right of action arising out of a tort should survive against
the executor or administrator of the tort-feasor, it is essential that the
latter should, by the wrongful act, have acquired specific property by
which, or by the proceeds of which, the assets in the hands of his per-
sonal representative are increased. It is not enough that benefit
resulted, or that expense was saved, to the tort-feasor, by which his
estate may be larger than it otherwise would have been.

[Argued October 31st, 1894—decided January 8th, 1895.]

APPEAL from the doings of commissioners upon the estate
of Lizzie Ferguson, late of Danbury, deceased; taken to the
Superior Court in Fairfield County and tried to the court,
*Thayer, J.,* upon the defendant's demurrer to the plaintiff's
amended statement of his first claim, and upon the answer
of the defendant to the plaintiff's second claim; the court
sustained the defendant's demurrer to the first claim, and
rendered judgment for the plaintiff upon his second claim,
and the plaintiff appealed for the alleged error of the court
in sustaining the demurrer to his first claim. *No error.*

The case is sufficiently stated in the opinion.

*Eugene C. Dempsey*, for the appellant (plaintiff).

The appellant claims to recover for services rendered and goods furnished upon the ground of an implied contract, the intestate having enriched herself at the plaintiff's expense, when he was under no legal or moral obligation to incur any expense upon her account. This is a legal claim and one which, upon the facts shown, entitles the plaintiff to judgment. *Hasser* v. *Wallis*, 1 Salk., 28; Espin. Nisi Prius, 1, 2; 1 Swift's Dig., 399, 402; *Peters* v. *Steele*, 3 Yeates (Pa.), 250; *People* v. *Spier*, 77 N. Y., 150, 151; *Richer* v. *Stanton*, 16 Wend., 25; *Boardman* v. *Ward*, 40 Minn., 399; *Hickham* v. *Hickham*, 46 Mo., 496; *Citizens Gas Light Co.* v. *Granger*, 6 West. Rep., 85; *Higgins* v. *Breen, Admr.*, 9 Mo., 497; 2 Parsons on Cont., 45; 2 Wait's Ac. & Def., 604; 3 id., 583; Wood's Master and Servant, 109; Keener on Quasi Contracts, 318. The only case which is opposed to this line of reasoning is *Cooper* v. *Cooper*, 147 Mass., 370.

*William H. Williams*, for the appellee (defendant).

I. The facts do not justify an implication of a promise to pay for the support furnished, under the circumstances set forth. 3 Amer. & Eng. Ency. of Law, 861, note 2; *Potter* v. *Carpenter*, 76 N. Y., 157; 3 Wait's Ac. & Def. 583, 584.

Ferguson's only remedy was an action for fraud and deceit. *Blossom* v. *Barrett*, 37 N. Y., 434; *Price* v. *Price*, 75 N. Y., 244; *Robbins* v. *Porter*, 11 Allen, 588. A case identical with the present, except that the parties were reversed, was before the Supreme Court of Massachusetts in 1888. *Cooper* v. *Cooper*, 147 Mass., 370. The court in this case considers and criticises the case of *Higgins* v. *Breen*, 9 Mo. 493, the principal case upon which counsel for Ferguson relies.

II. The claim being founded upon a tort, does not survive. It would seem that as applied to this case there could hardly be any contention against this proposition. *Cooper* v. *Cooper*, 147 Mass., 374: *Mitchell* v. *Hotchkiss*, 48 Conn., 9; *Hegerich* v. *Keddie*, 99 N. Y., 258. "An action to recover damages for alleged fraud on the part of defendant, in that he induced plaintiff to marry and to cohabit with him by means of false

and fraudulent representations that his first wife was dead, and that he was in all respects competent to marry, does not survive; and upon the death of defendant, cannot be revived against his personal representatives. The action is for injury to the person of the plaintiff and its character is not changed by an allegation in the complaint that defendant 'promised, undertook, covenanted and warranted that he had the right and was in all respects competent to marry.'" *Price* v. *Price*, 75 N. Y., 244. An action for breach of promise of marriage, where no special damage is alleged, does not survive. *Stebbins* v. *Palmer*, 1 Pick., 71; *Smith* v. *Sherman*, 4 Cush., 408. An action for deceit in the sale of poisoned grain, whereby the purchaser's horses are killed, does not survive. *Cutting* v. *Tower*, 14 Gray, 183.

The form of the action is not so important as its nature. *Booth* v. *Northrop*, 27 Conn., 331; *Phillips* v. *Homfray*, 24 Ch. Div., 439; *Jenkins* v. *French*, 58 N. H., 553; *Boor* v. *Lowrey*, 103 Ind., 468, (53 Amer. Rep., 519); *Whitaker* v. *Gavit*, 18 Conn., 522–527; *Mitchell* v. *Hotchkiss*, 48 id., 16.

HAMERSLEY, J. Harrison Ferguson and Lizzie Seymour intermarried October 27th, 1891, and cohabited as man and wife until the death of the latter, April 26th, 1893. At the time of the marriage and during its continuance Lizzie Seymour had a lawful husband living; she induced Ferguson to marry her by falsely representing to him that she was a single woman, and thereafter and until her death caused him to believe that he was her lawful husband; during this cohabitation he, relying on the said representations, furnished her with board, lodging, medical attendance and other necessaries, of the value, in the whole, of $749.51. Upon the death of Lizzie Seymour the estate was represented by the administrator to be insolvent, and commissioners thereon were appointed. Ferguson presented to the commissioners a claim against the estate, based on the above facts. The commissioners allowed on this claim the sum of $429.77. Robert Payne, a brother, heir at law and creditor of the intestate, appealed to the Superior Court from the doings of the com-

missioners in allowing the claim. In the Superior Court Ferguson filed a statement of claims, setting out in detail the above facts, and accompanied by a bill of particulars. To this statement of claims Payne demurred. The court sustained the demurrer, and gave judgment disallowing the claim. This is an appeal by Ferguson from that judgment, and the only reason assigned is, that the court erred in sustaining the demurrer.

The presentation of the claim is, in effect, an action by Ferguson against the administrator of Lizzie Seymour's estate; the appellant in error represents the plaintiff, and the appellee in error the defendant; the judgment sustaining the demurrer is a judgment that the plaintiff, on the facts recited, has no cause of action against the defendant.

It is claimed on behalf of the plaintiff that these facts show he had a cause of action against Lizzie Seymour during her life; that such cause of action was essentially and in substance for a breach of contract obligation implied by law from the facts, and therefore survived against her administrator. It is claimed on behalf of the defendant that the plaintiff, for the special redress sought in the claim, had no cause of action against Lizzie Seymour during her life; or, if such cause of action existed, it was for a private wrong or injury to the person, and therefore does not survive against the administrator.

In discussing whether the plaintiff had a cause of action against the intestate during her life for the special redress now sought, the determination of the nature of such cause of action, *i. e.*, whether founded substantially on a private wrong, or on some contract or *quasi* contract obligation, is necessarily involved. The precise question therefore presented is this: Does a man living with a woman in the relation of husband and wife have, under any circumstances, unless by virtue of some express agreement, a right of action against the woman for the value of shelter, food and clothing given her during the continuance of that relation?

The statement of the question would seem to compel an answer in the negative. The relation of husband and wife

involves a mutual understanding that the man shall furnish support and the woman shall furnish services, not for hire, but as a free gift; all consideration of the value of such support or service, whether absolute or comparative, is excluded by the fact of this relation. It is a settled principle of law that where two persons are in the habit of furnishing materials or service to each other under the mutual understanding that such reciprocal favors are a free gift, no cause of action can exist in favor of one against the other for the value of such materials or service. *Potter* v. *Carpenter*, 76 N. Y., 157.

In this case no possible doubt could arise except for the confusion caused by the peculiar nature of the legal status of husband and wife. The relation of husband and wife, *i. e.*, the cohabitation as man and wife, is a question of fact determined by the will of the parties; the status of husband and wife is a question of law determined by the absolute mandate of the State. The status may exist in law without the relation in fact; and the relation may exist at the will of the parties independently of the legal status, and is then unlawful so far and only so far as illicit intercourse is involved. The existence in fact of that relation, on general principles of law, expressly negatives any cause of action in one against the other for the value of the reciprocal gifts of support and service, whether the relation as carried on is legal or illegal. It may be knowingly illegal on the part of both, or innocently illegal on the part of both, or innocently illegal on the part of one only; but in either case the legal effect of the reciprocal gifts of one to the other is determined by the fact of the relation and is the same; except that when the relation is coincident with the legal status of husband and wife, such gifts rest not only on a mutual understanding proved by the fact of the relation, but also on the duty involved in the existence of the legal status. *Robbins* v. *Potter*, 11 Allen, 588.

But it is said that in this case the woman has deceived the man into falsely assuming the legal status of husband, and so has done him a great injury. True. And just here

comes in the confusion that has led some courts and text-writers into overlooking the distinction between a personal injury as a cause of action, and the incidental aggravation of the damage following that injury as a cause of action independently of the injury.

What is this wrong? The overt act is a deception, a false statement. A false statement made by one and believed by another is not, *per se*, a legal injury and actionable. If the false statement is the direct means of obtaining the property of another, there is a legal injury to rights of property, and the owner has an action for the property or its value, based on the fraud, and also in some cases on the implied contract to return property, or the proceeds of property, which legally or equitably belongs to another. But here the false statement as to the legal status of the woman was not the direct means of obtaining any property; it was the direct means of inducing the man to take part in the legal form of marriage. The form was a nullity. No property was or could be thereby secured. But the wrong was complete, the legal injury was inflicted, the moment this invalid marriage was consummated. The injury may continue, and subsequent events may aggravate the resulting damage, but they cannot change the nature of the wrong, or alter the legal injury which is the cause of action. The legal injury is not to property, but to the person, and is of a nature entirely *sui generis*, owing to the peculiar nature of the legal status of husband and wife, and the far reaching and complex personal interests that depend on the maintenance and due observance of that legal status. The family is the foundation of society; the status of husband and wife is fixed and regulated by the State by virtue of its inherent right to settle the foundations of social order. Indeed the family and the obligations and privileges pertaining to it reach back of all State regulations; the family develops the State and is coincident with the birth of man. It is evident that the direct injury resulting from inducing a man to falsely assume the status of husband is one absolutely unique and far reaching in resulting damage. It may involve establishing a family

that is no family, but the home of shame; the raising children not to be heirs but bastards; the surrender of the devotion of a wife for the services of a harlot; the loss for a longer or shorter time, perhaps the total loss, of all the privileges, happiness, respect and honor that follow the maintenance of a lawful home; such an injury is not analogous to any other injury known to the law. This supreme injury the plaintiff claims to have suffered, and because he has suffered it, claims the right to bring an action, not to recover the direct resulting damage, but to recover the value of food and lodging he has given the woman who inflicted the injury. In other words, the claim is, that by reason of the primary wrong, the plaintiff for a year or more exchanged presents with the woman; that this exchange was not on the whole a remunerative transaction, although it might have resulted to his benefit; and therefore the alleged loss can be treated not merely as an incident possible to be considered in aggravation of damages for the wrong, but as a substantive injury directly resulting from the primary wrong, so as to constitute an independent and separate cause of action. The question might be refined by claiming that each mouthful of food or each night's shelter furnished, was obtained by means of the woman's false statement as to her legal status; but this is a mere quibble and is palpably untrue. Plainly the actual condition is this—a man and woman live together on the distinct mutual understanding that the man shall furnish materials and the woman shall furnish services; the relative value of one to the other is not considered; the balance of gain may be on either side; in fact it proves to be on the woman's side; he is the loser and she is the gainer to the extent of such balance; the man says the woman made a false statement which he believed and by which he was induced to live with her; to be sure this false statement had no relation to the relative value of the materials and services exchanged; it did not deceive him as to how the balance of benefit might turn out, and so as affecting that balance did not injure him, but did injure him in other ways. The damage resulting from that injury he can

recover; but even if such damage can be enhanced by proof that the pecuniary value of the gifts he made the woman while the relation of husband and wife in fact existed exceeded the value of the gifts she made him, nevertheless, the fact remains true that such gifts were made in pursuance of a mutual understanding that no payment for them should be made by either, and therefore no implied contract of payment can be predicated of such gifts.

In this case the deception which caused the actionable injury relates to the legal status of the woman; suppose it related to her birth. She represents herself of pure white blood, when in fact she is partly of indian or negro blood; the man claims that he would not have lived with her unless he had believed this false statement, and that his association with a half-breed has been an injury to him in many ways. Or suppose she falsely represents herself as not related to him, when she is in fact his sister, does the fact that she has deceived him into unconscious participation in the crime of incest give him an independent cause of action for alleged loss on the exchange of materials and services which he would not have entered into had he not been so deceived? Or, test the principle claimed by an application to conditions free from all complication with the marriage relation. A banker is deceived by an adventurer into believing him to be the officer and agent of a foreign bank; influenced by this deception he accepts the position of agent for the bank, holds himself out as such agent, makes contracts in the name of the bank, and when the deception is discovered has suffered a grievous loss in money and reputation. During the continuance of the relations between him and the adventurer, the supposed officer of the foreign bank, and in pursuance of a custom prevailing when such relations exist, he has made an exchange of presents with the adventurer. He finds the value of the presents sent exceeds the value of the presents received. Does the original deception as to the legal position of the adventurer, by which he was drawn into assuming a false position so disastrous to him, furnish an independent cause

of action for the recovery of an alleged loss on the exchange of presents?

The analogies are not complete, and herein lies the difficulty of demonstrating the principle which should control when a man, deceived into a false assumption of the status of husband, and into unconscious participation in the crimes of adultery and bigamy, and suffering the irreparable injuries involved in such deception, alleges this deception or this injury as ground for recovering an alleged balance on the exchange of gifts while living with the woman who inflicted the injury. There is no analogy to such a case. And so far as we know such a case has never been presented to a court. The question has been discussed in a few cases, where a woman who has been thus injured and, shut out from all redress for the injury by the death of the man, has sought to make his estate liable for the value of her services. We believe this is the first instance where such a claim has been made by a man; and have no knowledge that such action by either man or woman was ever brought during the life of the wrong-doer. A court might be excused, when the perpetrator of such an injury has escaped punishment in life, for being acute in seeking reasons for making the estate liable for some small fraction of the resulting damage, especially when the claim is presented by a woman whose sufferings from such an injury are liable to be so much more severe; but cannot be excused for pushing such acuteness into the region of fallacy.

The case of *Higgins* v. *Breen*, 9 Mo., 497, sustains the theory that a woman may recover the value of her services against the estate of the man who has deceived her into a false marriage, if on the whole they were valuable. The Supreme Court of Massachusetts in an opinion which suggests the views we have indicated, upholds the opposite theory. *Cooper* v. *Cooper*, 147 Mass., 370; *Grim* v. *Carr*, 31 Pa. St., 533; *Price* v. *Price*, 75 N. Y., 244. But all courts agree that such action cannot be brought against the estate of the wrong-doer, if the cause of action is in substance for the recovery of damages from a tortious injury to the person,

and cannot be brought unless the same cause of action existed against the wrong-doer while in life.

The question has never been decided in this State, and may therefore be determined wholly on principle. For the reasons stated, we think the true application of the legal principles under which rights are defined and causes of action are classified, to the confusing complication of ordinary rights with the peculiar legal status of husband and wife involved in this question, justify the following conclusions: The deception by which a married woman induces a man to falsely assume and maintain the status of her husband, is an injury to the person complete with the consummation of the void marriage. Such injury gives to the man a right of action against the woman for damages resulting from such false assumption of the status of husband. A pecuniary loss sustained by having in fact lived with a woman in the relation of husband and wife may be considered in estimating the damages caused by this injury; but such loss, if it can be recovered at all separate from all other damage, can only be so recovered in an action based on the original wrong, in which the plaintiff abandons all claim to any resulting damage except this incidental loss; and therefore the substantial cause of the only action in which such loss can be separately recovered, is the deception by which the plaintiff was induced to falsely assume the legal status of a husband. Such cause of action is founded wholly on a private wrong, and under existing law cannot survive against the legal representatives of the perpetrator.

It follows from these conclusions that Ferguson had no cause of action against Lizzie Seymour during her life for the claim he now presents against her estate, unless such claim is for damages resulting from an injury to the person, and in that case the cause of action does not survive against her administrator.

The plaintiff, in support of his claim, invoked in argument the principle that where property has been acquired by means of a tort, there may result a duty, imposed by law on the wrong-doer, of returning the property or its proceeds, which

duty may be enforced by an action based on such *quasi* contract.

Such principle does not conflict with the substantial distinction between rights founded in tort and in contract—a distinction ordinarily of easy application. Doubts arise only where a transaction lies within that field, of necessity a shadowy one, where the essential element of the right passes from the domain of tort to that of contract. The principle invoked has been somewhat obscured by distinctions not of substance but of form, resulting from technical rules developed in the use of an arbitrary and artificial system of forms of action, now happily obsolete; and has been most frequently appealed to when a claim, as in this case, is sought to be enforced against the estate of a deceased person, and the liability of the estate depends upon the question whether the cause of action that existed against the person deceased was in substance founded in tort or in contract.

When such cases first arose an attempt was made to make the artificial form of action usually adopted rather than the substantial cause of action, the test of a survival of the suit. In the case of *Hambly* v. *Trott*, 1 Cowp., 374, LORD MANSFIELD established the sound rule that in such cases the substance and not the form might control; but in the ardor of vindicating his position he used language and illustrations that led others to draw conclusions the decision did not justify; and JUDGE SWIFT in his Digest relies on this case in support of a broad statement of the rule. 1 Swift's Digest, 448. In *Phillips* v. *Homfray*, L. R., 24 Ch. Div., 439, the language of LORD MANSFIELD was pressed in support of the claim that when, by means of a tort, the wrong-doer benefits himself and saves the payment of money he might otherwise have paid, although no specific property is acquired and added to his estate, yet a right of action for the amount of such benefit survives against the executor of the wrong-doer; but the court held that *Hambly* v. *Trott* did not justify such claim.

The principle involved is: In the case of a tort directly resulting in the wrongful acquisition of property, the law imposes on the wrong-doer the duty of returning that prop-

erty to the owner; this duty may be treated as a *quasi* contract, and the neglect to perform it may become a breach of such contract; in such case the damage resulting from the tort is substantially the value of the property, and the damage resulting from the breach of contract is substantially measured in the same way; and so for determining the question of survival, the substantial cause of action may properly be treated as founded in contract, although the form of action might sound in tort. But such principle cannot apply unless property is acquired; merely deriving benefit from the tort is not sufficient; for otherwise we must hold that every tort by which the wrong-doer is benefited is also by reason of such benefit a *quasi* contract; and the field of pure tort must be restricted to such injuries as are wholly malicious or injure another without entailing any benefit whatever to the wrong-doer. To hold this involves a complete subversion of established law, already sufficiently shaken by the efforts to strain the principles defining rights to serve the exigencies growing out of artificial forms of action. A safe test, therefore, for determining the survival of an action on the ground of the substantial cause of action being such *quasi* contract is—did the wrong-doer acquire specific property by which, or by the proceeds of which, the assets in the hands of his executor have been increased? And so, in *Phillips* v. *Homfray*, the court says: "In such cases the action though arising out of a wrongful act does not die with the person. The property, or the proceeds or value, which in the lifetime of the wrong-doer could have been recovered from him, can be traced after his death to his assets and recaptured by the rightful owner there." And also: "It seems to us that LORD MANSFIELD does no more than indicate that there is a class of cases in which assumpsit can be brought against a wrong-doer to recover the property he has taken or its proceeds or value, and that in such cases the action will survive against the executor."

Substantially the same view was stated by this court in *Mitchell* v. *Hotchkiss*, 48 Conn., 16. "All private as well as public wrongs and crimes are buried with the offender. The

executor does not represent or stand in the place of the testator as to these, or as to any acts of malfeasance or misfeasance to the person or property of another, unless some valuable fruits of such acts have been carried into the estate." In *Jenkins* v. *French*, 58 N. H., 533, the court says: "The line of demarcation, separating those actions which survive from those which do not, is, that in the first the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter the injury complained of is to the person, and the property and rights of property affected are incidental."

There are indications in the opinion of the court, in some cases, of a theory that a tort may affect property in such manner that no action for any breach of contract or *quasi* contract can be maintained against the wrong-doer during his life, and yet after his death the retention by his executors of the resulting benefits of the wrong, may give rise to a cause of action substantially in contract against the executor, which did not exist against the testator. None of the authorities cited deal directly with such a theory, and such question is not raised in this case.

The principle the plaintiff invokes does not apply to his case; because during the life of the intestate he had no cause of action against her except for damages resulting from a private wrong; the injury he suffered was a personal injury, and if a consequential damage to his personal estate followed the injury, it was so dependent upon and inseparable from the personal injury which is the primary cause of action, that there is no right to maintain a separate action in respect of such consequential damage. *Drake* v. *Beckham*, 11 Mee. & Wel., 316; *Vittum* v. *Gilman*, 48 N. H., 419. The real reason and only ground in this and similar cases for the claim that the substantial cause of action is a breach of contract, is to be found in the mandate of the law which says that public crimes and private wrongs shall be buried with the offender. If the law were different; if the liability of an administrator were the same as that of his intestate when

living, no sane man would dream of maintaining that a breach of contract, express or implied, is the substantial cause of the action by which the injured party would then recover of the administrator the damages, or any part of the damages, he suffered from the wrong committed by the intestate. This law is based on public policy; it may not be wise; it does not infrequently work hardships. But it is the law. We cannot override it; nor can we partially escape its operation by devising distinctions which, if extended to other cases, will introduce a dangerous confusion in the principles that define the nature and extent of legal rights, and if not so extended will have no foundation except the determination of the court to evade the law.

The bill of particulars contains one or two items of small amount which may raise a question of liability not met by the demurrer; but we understood such question to be withdrawn during argument, and we do not think it is properly presented by this appeal.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.