[No. 21966. Department One. February 24, 1930.]

GRACE BORTLE, *as Administratrix, Appellant,* v. RUTH FRYE OSBORNE, *as Executrix et al., Respondents.*[1]

*Paul W. Houser, Palmer, Askren & Brethorst* and *H. W. Haugland,* for appellant.

*Roberts, Skeel & Holman* and *Frank Hunter,* for respondents.

[1]Reported in 285 Pac. 425.

MILLARD, J.—Alleging that the death of Joseph A. Bortle resulted from an automobile accident caused by the gross negligence of the host, the administratrix of the estate of the decedent instituted this action for the recovery of damages from the estate of the tort-feasor (who died prior to the commencement of the action) and from the tort-feasor's widow. Upon motion of the defendants, at the close of the plaintiff's case, judgment of dismissal was entered, the court holding that gross negligence creating liability under the host-guest rule was not shown and that the right of action did not survive the death of the alleged tort-feasor. From that judgment the plaintiff appealed.

About four o'clock of the morning of July 24, 1927, Russell M. Frye invited two friends named Rinehart and Lyons to accompany him from Seattle to his home on Lake Washington for a swimming party. Frye granted Rinehart's request for permission to invite Joseph A. Bortle. Bortle's wife, the appellant, joined the group by invitation of her husband. About five a. m., the automobile in which the persons named were riding and which was operated by Frye and owned by the marital community composed of Russell M. Frye and Inez G. Frye, overturned near Renton, Washington. Bortle was instantly killed. The host-driver, Frye, sustained injuries resulting in his death before the commencement of this action. The Fryes were not acquainted with the Bortles. Mrs. Frye was not in the automobile and she had not been informed of the intended visit to the Frye home. A claim presented to the estate of the deceased Frye for Bortle's death was rejected, whereupon this action ensued.

Does the right of action against a marital community for a tort committed by the husband member of the community survive against the community on the

death of the tort-feasor husband? That is the decisive question in this case.

Stressing the similarity of the community relationship to that of a corporation and of a partnership, and insisting that the community is a separate entity apart from the husband and wife, counsel for appellant cite the following as sustaining authority for the rule which they seek to invoke:

"If the community as such does a wrong, it must respond, just as under the same circumstances a corporation, a partnership, or any other legal entity composed of more than one person, must respond." *Day v. Henry,* 81 Wash. 61, 142 Pac. 439.

"One of the efficient causes of the doctrine in Washington is the view taken by the supreme court of that state that the community is a sort of juristic person. In legal imagination community property is detached from the spouses and vested in a holding company, called the community, which the court thrusts in between the spouses and their community property." McKay, Community Property (2d ed.), § 817.

"The law of this state permits both husband and wife to each hold property separate and apart from the other and recognizes that the marriage community is a separate entity distinct from the separate estates of each." *Mattinson v. Mattinson,* 128 Wash. 328, 222 Pac. 620.

"In fixity of constitution, a community resembles a corporation. It is similar to a corporation in this, also, that the state originates it, and that its powers and liabilities are ordained by statute. In it, the proprietary interests of husband and wife are equal, and those interests do not seem to be united merely, but unified; not mixed or blent, but identified. It is *sui generis,*—a creature of the statute." *Holyoke v. Jackson,* 3 Wash. Terr. 235, 3 Pac. 841.

The applicability of the doctrine of *respondeat superior* is urged. It is contended that, had the car been operated by an employee of the community within the

scope of his duties and the employee later died, the community would be liable for the tort which its agent committed; that, if the stockholder of a corporation were the agent-driver for the corporation, or if the agent-driver for a partnership were one of the partners, the action against the principal (the corporation or the partnership) would not abate by reason of the death of the agent. Stating that the case at bar is slightly different from the foregoing illustrations, counsel for appellant argue:

"It is not the agent with whom we are concerned. The case would be just the same were the driver of the car some third person who was not a party to the suit. The corporation's or the partnership's property is still liable for the obligation incurred by its wrongful act. Just like a partnership, a community is a separate entity from the members. It has the right to acquire property, to sell its lands, to enter into contracts, to engage in business, and to assume liabilities. When a partner dies the partnership is dissolved. Would we contend that if the tort-feasor partner died, the partnership property could not be used to compensate for a partnership tort? Whatever be the status of the community—whether it be likened to a partnership or corporation or whether it be held to be a distinctive, separate entity—we believe the doctrine of *respondeat superior* must be applied. And while we do not ask a separate judgment against the wife or against the estate, we do believe that the community property must be available towards the satisfaction of community wrongs."

We have not receded from the rule, which we now reiterate, that the liability for the husband's tort which is committed in the management or prosecution of the community business can be enforced against the community property. *Milne v. Kane,* 64 Wash. 254, 116 Pac. 659, Ann. Cas. 1913A 318, 36 L. R. A. (N. S.) 88; *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634.

We are not unmindful of expressions of this court that a marital community is an entity and that we have likened the community to a partnership and to a corporation.

By the community property law of this state, Rem. Comp. Stat., §§ 6890-6906, the legislature did not create an entity or a juristic person separate and apart from the spouses composing the marital community. The legislature did nothing more than classify as community property—designate the character of certain property as community and other property as separate—the property acquired after marriage by the spouses. We have, for convenience of expression, employed the terms "entity" and "legal entity" in referring to a partnership and to a marital community. However, we have never held that a partnership or a marital community is a legal person separate and apart from the members composing the partnership or community, or that either the partnership or the marital community has the status of a corporation.

A marital community is in no sense a corporation; neither is it a partnership, though the community of property between the spouses is, in a restricted sense, a partnership between the husband and wife. The legislature, in defining community property, §§ 6890-6906, Rem. Comp Stat., did not change the relationship of husband and wife to the status of a corporation or declare that the property acquired during marriage was owned by a legal personality distinct from the spouses composing the community. In the community property each of the spouses has an undivided one-half interest.

"In a restricted sense the community of property between husband and wife is a partnership between the husband and wife, but, while in many respects it bears a close analogy to an ordinary partnership, the an-

alogy is not complete, and in no exact sense can it be denominated a partnership. For the purpose of classification merely, and to keep it distinct in legal contemplation, separate from community rights and obligations, community property between husband and wife is sometimes, by a legal fiction, treated as a distinct legal entity constituting the center of certain defined rights and obligations. But strictly speaking it is not a legal entity.'' 31 C. J., p. 9.

"By the provisions of the husband and wife acts passed in 1879, and previously, the husband and wife are considered as constituting together a compound creature of the statute, called a community. This creature is sometimes, though inaccurately, denominated a species of partnership. It probably approaches more nearly to that kind of partnership called *universal* than to any other business relationship known to the civil or common law.

"A *conventional* community, in a state where statutes would permit, might be contrived which would be substantially a partnership; but an ordinary *legal* community is, in many important particulars, quite distinct. It is like a partnership, in that some property coming from or through one or the other or both of the individuals forms for both a common stock, which bears the losses and receives the profits of its management, and which is liable for individual debts; but it is unlike, in that there is no regard paid to proportionate contribution, service, or business fidelity; that each individual, once in it, is incapable of disposing of his or her interest; and that both are powerless to escape from the relationship, to vary its terms, or to distribute its assets or its profits. In fixity of constitution, a community resembles a corporation. It is similar to a corporation in this, also, that the state originates it, and that its powers and liabilities are ordained by statute. In it, the proprietary interests of husband and wife are equal, and those interests do not seem to be united merely, but unified; not mixed or blent, but identified. It is *sui generis*,—a creature of the statute. By virtue of the statute this husband and wife creature acquires property. That property must be procurable,

manageable, convertible, and transferable in some way. In somebody must be vested a power in behalf of the community to deal with and dispose of it. To somebody it must go in case of death or divorce. Its exemptions and liabilities as to indebtedness must be defined. All this is regulated by statute." *Holyoke v. Jackson,* 3 Wash. Terr. 235, 3 Pac. 841.

██ ██ This is an action to recover for death by wrongful act. The right of action for wrongful death is created by statute and the action abates upon the death of the wrongdoer unless statutory authority for survival of the action can be found. At common law an action for death by wrongful act abated upon the death of the injured person or upon the death of the wrongdoer. That situation obtained in England until the passage of Lord Campbell's act. By our statute, first enacted in 1854, a right of action is given for the death of a person caused by the wrongful act, neglect or default of another.

"When the death of a person is caused by the wrongful act, neglect or default of another his personal representative may maintain an action for damages against the person causing the death; . . ." Rem. Comp. Stat., § 183.

By virtue of that statute, an action for the death of a person may be maintained against the tort-feasor. Neither the terms of that statute nor the statute on survival of actions,

"All other causes of action [than those enumerated in § 183] by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter. Where the cause of action survives, as herein provided, the executors or administrators may maintain an action at law thereon against the party against whom the cause of action accrued, or after his death, against his personal representatives," Rem. Comp, Stat., § 967,

extend the right of action against the personal representatives of the deceased tort feasor. In the event of the wrongdoer's death, the common law rule of *actio personalis moritur cum persona* prevails; that is, the right of action for the tort does not survive the death of the tort-feasor. *Rinker v. Hurd,* 69 Wash. 257, 124 Pac. 687.

The authorities overwhelmingly support the view that, in the absence of a statute expressly so providing, the right of action for death by wrongful act does not survive the death of the wrongdoer. The reason for the adoption of this position is that such action, being purely statutory in its nature and being unknown to the common law, should be strictly confined within the limits of the statute creating the right.

A pure action in tort for unliquidated damages is not maintainable against the administrator or executor of a deceased tort-feasor. *State ex rel. Baeder v. Blake,* 107 Wash. 294, 181 Pac. 685.

At early common law a suit abated upon the death of the plaintiff or defendant. The death of one of two or more plaintiffs pending the suit abated the action. By statute it was later provided in England that the death of one of the plaintiffs during pendency of an action did not abate the action, which could be prosecuted in the name of the survivor, if the cause of action survived. Actions against two jointly in tort did not abate by the death of one of the defendants, except as to the deceased, each of the defendants being answerable for the wrong. 1 R. C. L., 21-22. This is the rule under which an action in tort may be prosecuted against the surviving member of a firm, the partners being jointly and severally liable.

"The test of the liability is based on a determination of the question whether the wrong was committed in behalf of and within the reasonable scope of the busi-

ness of the partnership. If it was so committed, the partners are liable as joint tortfeasors. Being liable as joint tortfeasors the party aggrieved has his election to sue the firm or to sue one or more of its members, and may even single out for suit a partner who personally was in no wise involved in the commission of the tort." 20 R. C. L., p. 914, § 126.

See, also, *Hess v. Lowrey,* 122 Ind. 225, 23 N. E. 156, 7 L. R. A. 90; 1 C. J., p. 163, § 271; 47 C. J., p. 964.

It is not a survival against the partnership. The right of action survives against the surviving partner or partners for the reason that the members of the firm are jointly and severally liable. That rule is not applicable in the case at bar, as the wife member of the marital community was not jointly and severally liable.

True, at common law all actions in tort did not die with the person. The nature of the cause of action was the test. If the tort were not connected with contract and affected the person only and not the estate, no right of action survived the death of the wrongdoer. *Lee's Adm'r v. Hill,* 87 Va. 497, 12 S. E. 1052; *State ex rel. Baeder v. Blake; Rinker v. Hurd, supra.* And, of course, where the liability was joint and several, the death of one of the tort-feasors did not release the other.

In order that a right of action arising out of a tort should survive against the personal representative of the deceased tort-feasor, it is essential that the wrongdoer should, by the wrongful act, have acquired specific property by which or by the proceeds of which the assets in the hands of his personal representative are increased. *Payne's Appeal,* 65 Conn. 397, 32 Atl. 948. Based upon the foregoing, we held, in *Kangley v. Rogers,* 85 Wash. 250, 147 Pac. 898, that, where the husband, a notary public, made a false certification, and

died subsequent to the commencement of the action to recover damages therefor, the judgment was enforceable against the community property.

Actions in tort, where the tort was not connected with contract or the estate of the tort-feasor was not enriched thereby, were originally designed for the punishment of the wrongdoer. If the tort-feasor died, his personal representative, not having committed in his personal capacity any wrong, could not be prosecuted for such tort. That is the reason of the rule that an action is not maintainable, in the absence of statutory authority therefor, against the personal representative of the deceased wrongdoer, where the tort is not connected with contract or the assets of the estate were not increased by the wrongful act.

The administratrix of the estate of the deceased Bortle brought this action against the executrix of the estate of Frye, deceased, and against Inez G. Frye, the widow. The prayer of the complaint is for judgment against the estate of the deceased Frye and against his widow. It is conceded that the spouses were not jointly and severally liable for the tort, and that no recovery may be had against the estate of the deceased husband or against the separate property of the wife. Arguing that the action is against the community, counsel for appellant contend that the community is an entity separate and distinct from the spouses composing it and continues to exist, as would a corporation or partnership, for the purpose of liquidation of the estate; that the widow's one-half or community interest and the deceased husband's one-half or community interest in the community property can be made to respond to the payment of a judgment; that an action will lie against the surviving wife for the whole claim as in an action against a surviving partner for a tort committed by the other partner, but only the com-

munity property may be subjected to payment of the judgment.

This is a pure action in tort for unliquidated damages, hence can not be maintained against the executrix of the estate of the deceased Frye. *State ex rel. Baeder v. Blake, supra.* If Russell M. Frye and Inez G. Frye had been partners, instead of husband and wife, the action would have to be brought against the surviving member only.

"The rule is well settled that at law the creditors of a partnership must bring their actions against the surviving members only. There is no statute of this state changing the common law in this respect." *Brigham-Hopkins Co. v. Gross,* 30 Wash. 277, 70 Pac. 480.

The liability, if any, for the tort of which appellant complains, would be a community obligation which could not be enforced against the separate property of the wife. The separate property of the wife would not be liable for a judgment against the community (*Insley v. Webb,* 122 Wash. 98, 209 Pac. 1093), even if obtained against the community during the life of both spouses.

Plainly, the action cannot be maintained against the personal representative of the deceased Frye, as the action is for a tort not connected with contract and affects the person only. Neither is the action maintainable against the widow, as she was not jointly and severally liable. The community was dissolved by the death of the husband. There can be no community property after the community has been dissolved. All rights and incidents of an existing community relationship cease the instant one of the spouses dies. By a fiction of law the community is deemed to continue for liquidation of the estate.

"Moreover the community no longer exists after the death of one of the spouses, but its estate is simply held intact by administrative proceedings for the pur-

pose of paying indebtedness created during its exist-
ence. The entity called the 'community,' is immediately
dissolved upon the death of one of its members, and is
in law as effectually dead as a deceased individual."
*Bank of Montreal v. Buchanan,* 32 Wash. 480, 73 Pac.
482.

In *Kangley v. Rogers, supra,* the death of the notary
public did not abate the action against the marital
community for the negligent performance by the hus-
band of the duties of the office. We held that the per-
formance of the duties of a notary public was a com-
munity business of benefit to both spouses rendering
the community liable for the false certification of an
instrument. We followed the rule that the right of
action arising out of a tort survives when the assets
of the estate are increased by the wrongful act.

Accepting, for the sake of argument, the theory of
appellant that the marital community is an entity sepa-
rate and distinct from the spouses composing it, the
community died before the action was instituted. Is
there any authority for survival or revival of a cause
of action against the community? As we have seen,
there is neither common law or statutory authority for
proceeding against the personal representative of the
deceased Frye or against the widow. The community
property system is a creature of statute. It is un-
known to the common law. Unless there is a statute,
and we find none, creating a right of action, the action,
being for a pure tort, for unliquidated damages, did
not survive the death of the wrongdoer. As we have
seen, the right of action against a surviving member
of a firm obtains by reason of the joint and several
liability of the partners. The members of the marital
community in the case at bar were not jointly and sev-
erally liable.

The right of action against a corporation after dis-

solution is by virtue of the statute prolonging the corporate existence after dissolution. Rem. Comp. Stat., §§ 3833, 3834, 3836. At early common law the rule was that all causes of action against a corporation perished with the dissolution of the corporation. The debts of the corporation were extinguished, its real property reverted to the grantor and its personal property escheated to the crown. Prior to statutory modification of the common law rule, recourse was had to the courts of equity (which would not allow a trust to fail for want of a trustee) for protection of creditors and stockholders. *Nelson v. Hubbard,* 96 Ala. 238, 11 South. 428, 17 L. R. A. 375.

The judgment is affirmed.

MITCHELL, C. J., PARKER, TOLMAN, and BEALS, JJ., concur.