[No. 19797-5-I.   Division One.   February 8, 1988.]

EDWARD T. HALLETT, *Individually and as Personal Representative, ET AL, Appellants,* v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ET AL, *Respondents.*

*James R. Irwin, Karl J. Quackenbush,* and *Shidler, McBroom, Gates & Lucas,* for appellants.

*William R. Hickman, Reed, McClure, Moceri, Thonn & Moriarty, Stephen C. Kelly,* and *Ferguson & Burdell,* for respondents.

SCHOLFIELD, C.J.—The estate of David J. Hallett, deceased, and the parents and brother of the deceased (Hallett) appeal dismissal by summary judgment of their action seeking a declaratory judgment against St. Paul Fire and Marine Insurance Company. We affirm.

## FACTS

At all times material to the issues herein, D. Gordon Willhite was a partner in the Seattle law firm of Sax & MacIver. On Friday, November 17, 1984, at the end of a normal business day, Willhite walked to a nearby restaurant, where he consumed about 10 Manhattans between 6 p.m. and 11:30 p.m. Initially, he was with a friend and was later joined by another partner in the firm, with whom he discussed firm business for a substantial period of time. Willhite paid for the drinks with a firm credit card, but there was evidence the firm later refused to honor the charge.

On his way home, Willhite drove his car over the center line of the street and collided with a motorcycle driven by David Hallett, who died as a result of the accident. There was evidence Willhite was under the influence of alcohol at the time of the accident.

Willhite was driving a 1978 BMW, which he leased for his personal use from a commercial lessor. Sax & MacIver did not participate in the lease of this vehicle. Willhite treated the car as a business car on his 1984 tax return, representing that he used the car for business 70 percent of the time. Willhite carried an automobile policy with American Economy Insurance Company, insuring his personal liability up to $300,000.

The subject of this action is a policy written for Sax & MacIver by St. Paul, providing excess liability insurance protection; that is, it paid claims up to its limit of liability after any other insurance applicable to the loss had been used up. Its limit of liability is $500,000.

The St. Paul policy provided liability coverage for non-owned automobiles. That section of the policy defines "covered autos" as follows:

/x/ Hired autos only. We'll cover autos you lease, hire, rent or borrow. This doesn't include autos you lease, hire, rent or borrow from any of your employees or members of their households.

/x/ Non–owned autos only. We'll cover autos you don't own, lease, hire or borrow which are used in connection with your business. This includes autos owned by your employees or members of their households but only while used in your business or your personal affairs.

/x/ Optional partnership coverage. We'll protect your partnership against liability claims that result when any of your partners uses an auto owned by the partner or by a member of his or her household for your business. We'll also protect the remaining partners against liability claims, but we won't protect the owner of the auto.

Sax & MacIver purchased all three coverages. The annual premium for the hired auto coverage was $32; for the non-owned auto coverage it was also $32; and for the optional partnership coverage the premium was $547.

## The Wrongful Death Action

On February 14, 1985, Hallett brought a wrongful death action against Willhite, his wife and their marital community. Hallett did not sue Sax & MacIver and did not allege that the firm was in any way responsible. On May 16, 1986, Hallett entered into a settlement agreement with Mr. and Mrs. Willhite and their insurer, American Economy. The Willhites agreed that judgment in the amount of $750,000 would be entered against them. American Economy agreed to pay out the limit of its policy in the amount of $300,000. Hallett agreed not to execute on the remainder of the judgment. On July 2, 1986, judgment was entered against Willhite and his marital community for $750,000.

## The Declaratory Judgment Action

On July 18, 1986, Hallett filed a complaint seeking a declaratory judgment that through the St. Paul policy insuring Sax & MacIver, St. Paul also insured the individual liability of Willhite. In the complaint for declaratory judgment, Hallett alleged that the BMW leased by Willhite was a "covered auto" and that Willhite was a protected person under the terms of the St. Paul policy. The complaint sought an order declaring that the claims made by the plaintiffs were covered by the St. Paul insurance policy and sought judgment against St. Paul for the balance due on the judgment against Willhite.

The parties filed cross motions for summary judgment, and on December 19, 1986, the trial court denied Hallett's motion, granted St. Paul's motion, and dismissed the complaint with prejudice.

## Willhite's Individual Liability Not Covered

The principal issue in this appeal is whether the St. Paul policy provides coverage for Willhite's individual liability.

One cannot become an insured in a liability insurance policy without language making him an insured. There is no language in this policy making Willhite an insured. Under the heading, "Who's protected under this agreement", the policy states the owner of a hired auto is not

protected and the owner of a covered auto, if someone other than Sax & MacIver, is not protected.

Hallett argues that Willhite's BMW is a "covered auto" and then states in his brief that from that fact, "it follows that he is a protected person under the policy." Brief of Appellant, at 24. Hallett's brief correctly recognizes that for St. Paul to be liable, two requirements must be satisfied: (1) Willhite's BMW must be a covered auto, and (2) Willhite must be an insured. In making this argument, Hallett relies upon the first sentence of the coverage for nonowned autos only, which reads:

> We'll cover autos you don't own, lease, hire or borrow which are used in connection with your business.

Both parties agree that the use of the words "you" or "your" refer to Sax & MacIver. Both parties discuss the issues in a context treating Sax & MacIver as a legal entity, separate from the individual partners. This is consistent with the context in which the policy language refers to Sax & MacIver as the "insured" entity and refers to the partners as being separate from the law firm.[1]

Hallett contends the above quoted provision makes Willhite's BMW a covered auto because it is clear that Sax & MacIver did not own, lease, hire or borrow the car, and Willhite admitted in his deposition that he used it in connection with law firm business.

St. Paul responds that this sentence requires that the use of the auto at the time liability arises must be in the course and scope of the law firm's business.

Thus, we have two reasonable interpretations which would normally call for application of the rule that when an insurance contract is fairly susceptible to two or more reasonable interpretations, that interpretation most favorable

---

[1] Washington applies generally the aggregate theory of partnership, which is that a partnership is not a legal entity separate from the partners, but is simply a group of individuals doing business under an assumed partnership name. Since both parties proceed on the theory that it was the intention of the contracting parties to treat the partnership as an entity, we will proceed on the same basis.

to the insured must be employed. *Greer v. Northwestern Nat'l Ins. Co.,* 109 Wn.2d 191, 743 P.2d 1244 (1987).

In this case, however, whether we treat Willhite's BMW as covered or uncovered, the result is the same because Willhite is not an insured and thus has no personal liability protection under the St. Paul policy.

Hallett argues in his brief that since Willhite was driving a covered auto, it follows that he is a protected person, and to support that position Hallett quotes a sentence from the appropriate section of the policy, which reads: "This agreement provides excess insurance for any covered auto."

The sentence relied upon says nothing about whose liability is insured by the policy. It deals only with the type of coverage on a "covered auto."

The policy provision relating to optional partnership coverage provides a clear answer to Hallett's argument. That provision reads:

"We'll protect your partnership against liability claims that result when any of your partners uses an auto owned by the partner or by a member of his or her household for your business. We'll also protect the remaining partners against liability claims, but we won't protect the owner of the auto.

Willhite was the owner of the BMW. The optional partnership coverage provides that if the partnership should be liable for a partner's tortious conduct while using his own auto, the partnership and the individual partners have excess liability insurance protection covering that claim. The provision clearly states, however, that the owner of the auto is not covered.

■ There is no ambiguity in this language, and it is not contradicted by any other policy provision.

Given its clear meaning, the provision is not unreasonable. It provides coverage for the firm and the partners in those situations where the firm and individual partners are found vicariously liable for the tort of one of the partners while driving his own auto. It avoids the obviously increased risk of providing individual coverage for the

partner who is the tortfeasor. To construe the policy as providing personal liability coverage for the tortfeasor partner would amount to providing excess liability insurance coverage for the personal automobile liability of all of the partners in the firm for $547 per year. The policy language makes it clear that Willhite's personal liability to Hallett is not covered by the St. Paul policy.

## LAW FIRM'S VICARIOUS LIABILITY

Lastly, Hallett contends that St. Paul's cross motion for summary judgment should not have been granted because there are genuine issues of material fact on the question of whether Sax & MacIver is also liable for Willhite's tortious conduct. A review of Hallett's complaint in the wrongful death action and the amended complaint in the declaratory judgment action reflects that Hallett has never stated or attempted to litigate a cause of action against Sax & MacIver or the individual partners of that firm. Hallett alleged both in his complaint and amended complaint that Willhite's BMW was a business car used about 70 percent of the time for business purposes. However, that argument was made in an effort to establish that the BMW was a "covered auto".

The amended complaint in paragraph 14 contains the sentence, "Sax & MacIver, and the defendant co–partners, are legally responsible for the damages caused by Willhite to plaintiffs." However, in the relief requested in the amended complaint, the only reference to Sax & MacIver and the defendant individual partners is a prayer that the decision on coverage be made binding on each and all of them. The amended complaint prays that a judgment against St. Paul be awarded for the balance due on the judgment against Willhite, but there is no prayer for a judgment in damages against Sax & MacIver and the individual partners.

In the wrongful death action in which a judgment was obtained against Willhite, there was no effort by Hallett to establish a cause of action or recover damages from the law

firm. We must conclude that Hallett has not alleged a cause of action against the law firm. Under these circumstances, there could be no material issues of fact to be resolved on a claim that the law firm and the partners are liable to Hallett since no such claim has been alleged or litigated.

■ St. Paul seeks attorney's fees on appeal on the theory that Hallett's appeal is frivolous. A frivolous appeal is one presenting no debatable issues upon which reasonable minds might differ. *Streater v. White,* 26 Wn. App. 430, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980). The appeal in this case is not frivolous.

The judgment of the trial court is in all respects affirmed.

WILLIAMS, J., concurs.

RINGOLD, J.* (dissenting)—I respectfully dissent from the majority. The majority misperceives the issue by stating, "The principal issue in this appeal is whether the St. Paul policy provides coverage for Willhite's individual liability." Willhite's tortious conduct is not in issue, but the question before us is whether the accident occurred while Willhite was furthering the affairs of the partnership.

### PARTNERSHIP LIABILITY

A partnership is considered an aggregate of the partners rather than a separate legal entity, *Vasey v. Snohomish Cy.,* 44 Wn. App. 83, 91, 721 P.2d 524 (1986) (quoting with approval *Bortle v. Osborne,* 155 Wash. 585, 285 P. 425, 67 A.L.R. 1152 (1930)), at least with respect to relations with third parties. *Cf. State v. Birch,* 36 Wn. App. 405, 675 P.2d 246 (1984) (partnership is separate entity with respect to some aspects of a partner's rights in partnership property). The partnership is liable to the same extent as a partner for his or her wrongful acts while acting in the ordinary course of the partnership's business, RCW 25.04.130, such as a partner's negligent operation of a car while conducting

---

*Judge Solie M. Ringold is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 26.

business of the partnership. *Melosevich v. Cichy,* 30 Wn.2d 702, 193 P.2d 342 (1948). All partners are jointly and severally liable for tort claims against the partnership. RCW 25.04.150.

The insurance agreement at issue here is an addendum to the policy and is headed, "Liability Protection for Autos You Don't Own." The pertinent paragraphs of the agreement provide:

What autos are covered
The types of autos covered under this agreement are indicated on your Introduction page or by an "X" in the appropriate box or boxes below. These autos are considered "covered autos" for this agreement.
/x/ Hired autos only. We'll cover autos you lease, hire, rent or borrow. . . .
/x/ Non–owned autos only. We'll cover autos you don't own, lease, hire or borrow which are used in connection with your business. This includes autos owned by your employees or members of their households but only while used in your business or your personal affairs.
/x/ Optional partnership coverage. We'll protect your partnership against liability claims that result when any of your partners uses an auto owned by the partner or by a member of his or her household for your business. We'll also protect the remaining partners against liability claims, but we won't protect the owner of the auto.

. . .
What this agreement covers
This agreement provides excess insurance for any covered auto. Excess insurance applies after primary coverage has been used up.
We'll pay damages you're legally responsible for because of bodily injury or property damage caused by an accident involving the use of a covered auto. Bodily injuries include sickness, disease and death. Property damage includes loss or use of tangible property.

. . .
Who's protected under this agreement
1. You're protected under all circumstances covered by this agreement.

2. When "hired autos" are covered under this agreement, anyone else is protected while using a hired auto with your permission, except:
The owner of the hired auto.
Anyone working in a business of selling, servicing, repairing or parking autos.
3. Anyone responsible for the actions of a protected person is also protected to the extent he or she is responsible. But the owner of a covered auto is not protected.

The introductory portion of the policy names the firm, "Sax & MacIver," as the insured. Since the firm is not a legal entity separate from the partners, in order to give the policy meaning we must read it as insuring each partner as well while engaged in partnership business. Willhite hence is insured while acting within the scope of the partnership. His leased car was covered under the paragraph stating: "We'll cover autos you [*i.e.,* the insured] lease, hire, rent or borrow."

The agreement extends coverage to cars not owned by the partners. The majority argues that it contains two exclusions that act to deny coverage to Willhite. An exclusion in subparagraph 2 states that the owner of a hired car is not covered. Willhite's car was leased, and Hallett does not argue that its owner was covered. Subparagraph 3 states that "the owner of a covered auto is not protected." Since the agreement encompasses only autos that the partners do not own, this language again excludes only non-partners from coverage.[2]

The majority relies on a part of a paragraph titled "Optional partnership coverage" to bolster its decision. The paragraph, quoted above, states that "we won't protect the owner of the auto." The partners purchased coverage under this paragraph with an additional premium. Yet the

---

[2]In its discussion the majority begs the question of whether the policy covers individual partners when it paraphrases the latter exclusion as reading that "the owner of a covered auto, if someone other than Sax & MacIver, is not protected."

majority would read this to *limit* coverage rather than *enlarge* it. It is unreasonable to interpret a provision, one for which the partners paid an additional premium, in a manner that diminishes their benefits. The correct interpretation of the paragraph is that since it is part of the agreement that extends coverage to cars not owned by the insured, the paragraph excludes only car owners who are not partners, or employees not engaged in the business of Sax & MacIver. Under the majority's view, as I understand it, if the operator of the car had been an employee, operating his own or a leased car on partnership business, the paragraph would apply to protect the partners. There is no rationale whereby the operation of the car by a partner should be treated differently.

## FAILURE TO STATE CLAIM

The majority also claims that Hallett failed to assert that the partnership was liable. Hallett's amended complaint names the firm of Sax & MacIver and each partner individually as defendants. Furthermore, as noted by the majority, paragraph 14 of the amended complaint asserts that the firm and the defendant partners are legally responsible for Willhite's tort. Under CR 54(c), a final judgment shall grant whatever relief the prevailing party is entitled to, even if the party had not requested such relief in its pleadings. *Daves v. Nastos,* 105 Wn.2d 24, 27–28, 711 P.2d 314 (1985). CR 54(c) applies to summary judgments. *Draper Mach. Works, Inc. v. Hagberg,* 34 Wn. App. 483, 488–89, 663 P.2d 141 (1983). Furthermore, CR 8(f) requires: "All pleadings shall be so construed as to do substantial justice." Hallett's amended complaint is sufficient to state a cause of action against the firm, regardless of any perceived shortcoming in the complaint's prayer for relief.

The trial court erred in granting St. Paul's motion for summary judgment on the grounds that there were no material issues of fact of whether Willhite was covered

under the policy and whether the firm was liable for the tortious conduct. I would reverse and remand for trial.

Reconsideration denied March 31, 1988.

Review denied by Supreme Court July 5, 1988.