[No. 41623-5-I.   Division One.   January 19, 1999.]

EARL SMITH, *Appellant*, v. SEA VENTURES, INC., ET AL., *Respondents*.

*Betsy A. Gillaspy* and *Joseph C. Calmes*, for appellant.

*Russell R. Williams* of *Bogle & Gates, P.L.L.C.*; and *Terry L. Leitzel* of *Victor Seafoods*, for respondents.

BAKER, J. — In 1990 Smith purchased a fishing vessel from Sea Ventures, a corporation equally owned at that time by Lundvall, Morgan, and Soriano. Smith also purchased "all fishing rights that might apply to the vessel . . . ." In 1993 Sea Ventures was administratively dissolved because it failed to comply with state reporting requirements. In 1994 Lundvall, Morgan, and Soriano applied for, and the federal government issued, fishing rights derived from Sea Ventures' ownership of the vessel for the 1988, 1989, and 1990 fishing seasons. Smith had contacted Lundvall about these rights, and explained a provision allowing applications by former shareholders in a dissolved corporation which owned a vessel. The former shareholders sold the fishing rights after they were issued. Smith got neither the rights nor proceeds from the sale, and filed suit. Smith's case was dismissed on summary judgment as barred under RCW 23B.14.340 because Smith did not file suit within two years of the date of corporate dissolution.

We hold that Smith's claim is not barred under RCW 23B.14.340 and reverse summary judgment.

## I

Smith's claims were dismissed with prejudice on summary judgment. A moving party is entitled to summary judgment when there is no genuine issue as to any material fact, as demonstrated by the pleadings, affidavits, depositions, and admissions on file and the moving party is entitled to judgment as a matter of law.[1] Reasonable inferences from the evidence are resolved against the moving party.[2] Such motions should be granted only if a reasonable person could reach but one conclusion from all the evidence.[3] Appellate courts reviewing summary judgments engage in the same inquiry as the trial court (i.e., de novo).[4]

## II

In 1990 respondents Lundvall, Morgan, and Soriano each owned one third of Sea Ventures, Inc. That year, appellant Smith purchased a fishing vessel from Sea Ventures. The purchase agreement states: "SELLER agrees to convey to BUYER all fishing rights as they may apply to the vessel using past catch records, limited entry, and or past fisheries participation." Lundvall signed the agreement on behalf of Sea Ventures. In 1993 Sea Ventures was administratively dissolved under RCW 23B.14.210, by the Secretary of State, because the corporation failed to comply with annual reporting requirements.

In the late 1980's, the National Marine Fisheries Service

---

[1]*Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991)).

[2]*Folsom*, 135 Wn.2d at 663 (citing *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979)).

[3]*Folsom*, 135 Wn.2d at 663 (citing *Lamon*, 91 Wn.2d at 350).

[4]*Folsom*, 135 Wn.2d at 663 (citing *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994)).

(NMFS) had been considering a variety of fisheries management schemes. In 1993, NMFS finally adopted a scheme to distribute the annual catch of halibut and sablefish in the Gulf of Alaska. That scheme allocated "quota shares" (QS) between owners (or certain lessees) of vessels that fished halibut and sablefish in 1988, 1989, and 1990. A corporation, or a former shareholder in a dissolved corporation, could apply for QS under the scheme during the application period, which was January 1994 through July 1994. Contractual obligees such as Smith could not apply for QS.

Smith called Lundvall about the QS system, and Lundvall, Morgan, and Soriano applied for the fishing rights derived from Sea Ventures' ownership of the vessel. The NMFS issued those QS in December 1994, although that issuance was later challenged by a third-party. After the QS were issued, Smith called Lundvall to inquire about their status. Smith was told to contact Lundvall's attorney.

In the end, the QS were not delivered to Smith, but were sold for $770,000 under a January 1996 NMFS settlement agreement between a third-party who had leased the vessel in 1988 and Lundvall, Morgan, and Soriano. Under the terms of that settlement agreement, Lundvall, Morgan, and Soriano each received 18.33% of the $770,000. Smith was unable to obtain either the QS or the sales proceeds, and filed the instant case in October 1996. Upon respondent's motion for summary judgment, the trial court dismissed Smith's claims as barred under RCW 23B.14.340 because Smith did not file suit within two years of the date of corporate dissolution.

III

This case presents an unusual fact pattern. Typically, claims against the assets of dissolved corporations are made by a known creditor whose claim is ripe at the time of dissolution, or by an unknown claimant who files a product liability suit that may be based on events occurring after the

effective date of dissolution.[5] Smith's claim is unlike either of the two usual scenarios.

Like the creditor mentioned above, Smith's contract with Sea Ventures was known at the time the corporation was dissolved. But any potential claim under that contract was not ripe because NMFS had not yet issued any QS. However, Smith is not like the typical product liability litigant whose claim may be based on events occurring after corporate dissolution. Smith's identity, as well as the nature of his potential claim, were known to Sea Ventures by virtue of the 1990 contract.

RCW 23B.14.340, the corporate survival statute in effect in 1993 when Sea Ventures was administratively dissolved, reads:

Survival of remedy after dissolution

The dissolution of a corporation either: (1) By the issuance of a certificate of dissolution by the secretary of state, (2) by a decree of court, or (3) by expiration of its period of duration shall not take away or impair any remedy available against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding against the corporation may be defended by the corporation in its corporate name.

RCW 23B.14.340 was amended in 1995 by specifically adding administratively dissolved corporations to the coverage of the statute. Although Sea Ventures was administratively dissolved, for purposes of this appeal it is not relevant that the corporation was administratively dissolved. As discussed below, it is also not relevant whether we analyze Smith's claim under the 1993 or 1995 versions of RCW 23B.14.340.

RCW 23B.14.340 is based upon section 14.06 of the Model

[5]D. Gilbert Friedlander & P. Anthony Lannie, *Post-Dissolution Liabilities of Shareholders and Directors for Claims Against Dissolved Corporations*, 31 VAND. L. REV. 1363, 1367-69 (1978).

Business Corporations Act (MBCA). This model law proposes corporate regulations and shareholder's rights under state law, as well as default rules for corporate governance. Most states have adopted all or parts of the MBCA. MBCA sections 14.06 and 14.07 are intended *to* provide relief from the common law rule that abates actions and claims against dissolved corporations.[6] MBCA section 14.06 governs known claims against dissolved corporations, while MBCA section 14.07 governs unknown claims against dissolved corporations.[7]

In enacting RCW 23B.14.340, the Legislature did not adopt Model Business Corporations Act section 14.07, but did adopt MBCA section 14.06, and considered the official comments thereto. The official comment to MBCA section 14.06 states that this section is not intended to cover claims which are contingent or arise based on events occurring after the effective date of dissolution.[8] We do not know why the Legislature failed to enact MBCA section 14.07, nor do we need to consider that issue in order to resolve the instant case.

■ ■ We conclude that RCW 23B.14.340 does not, and never has, covered postdissolution claims to corporate assets, based on predissolution contractual rights, where shareholders have taken affirmative steps to appropriate

---

[6]*See* Friedlander & Lannie, 31 Vand. L. Rev. at 1367; Robert D. Snook, *The Liability of Dissolved Corporations Under CERCLA: The Importance of Being "Dead and Buried"*, 66 Conn. B.J. 397, 403 (1992).

[7]David B. Hunt, Case Note, *Tort Law—Towards a Legislative Solution to the Successor Products Liability Dilemma—Niccum v. Hydra Tool Corp., 438 N.W.2d 96 (Minn. 1989)*, 16 Wm. Mitchell L. Rev. 581, 598 n.93 (1990).

[8]*See generally* Hunt, 16 Wm. Mitchell L. Rev. at 597-98 (MBCA section 14.06 does not cover claims based on events occurring after corporate dissolution, MBCA section 14.07 covers such claims); Ann. E. Conaway Stilson, *Re-examining the Fiduciary Paradigm at Corporate Insolvency and Dissolution: Defining Directors' Duties to Creditors*, 20 Del. J. Corp. L. 1, 14 n.44 (1995) (citing 3 Model Business Corporations Act section 14.06(d) (1994) for the definition of "claim" as excluding contingent liabilities or claims based on events occurring after the effective date of corporate dissolution). MBCA section 14.07 covers such claims. Hunt, 16 Wm. Mitchell L. Rev. at 598.

those assets after corporate dissolution.[9] Recovery of corporate assets distributed to former shareholders upon dissolution is permissible in certain cases.[10] Such recovery may be proper here, and we hold that Smith may proceed against Lundvall, Morgan and Soriano individually.[11]

We reverse the trial court's grant of summary judgment, and remand this case for further proceedings.

Reversed.

BECKER and COX, JJ., concur.

Review denied at 138 Wn.2d 1003 (1999).

---

[9]We have considered several theories upon which such recovery can be based, but it is not necessary for us to select one of those theories because the facts of this case might allow recovery under more than one theory. *See generally* Friedlander & Lannie, 31 VAND. L. REV. at 1366, 1371-72; *Lyman Lumber Co. v. Favorite Constr. Co.*, 524 N.W.2d 484, 485 (Minn. Ct. App. 1994); *University of Alaska v. Thomas Architectural Prods., Inc.*, 907 P.2d 448 (Alaska 1995).

[10]*Lonsdale v. Chesterfield*, 99 Wn.2d 353, 662 P.2d 385 (1983).

[11]*See generally* Friedlander & Lannie, 31 VAND. L. REV. at 1369 n.21 (citing *Heaney v. Riddle*, 343 Pa. 453, 23 A.2d 456, 458 (1942) (shareholders may be personally liable for distributing corporate assets amongst themselves without providing for contingent claims and obligations under executory contracts)).