146 P.3d 914 (2006)
BALLARD SQUARE CONDOMINIUM OWNERS ASSOCIATION, a Washington nonprofit corporation, Petitioners,
v.
DYNASTY CONSTRUCTION COMPANY, a Washington corporation; Shin Lu Mark Liu and Jane Doe Liu, and the marital community composed thereof; Yung Pai Shu Liu and John Doe Liu, and the marital community composed thereof, Respondents.
No. 76938-9.
Supreme Court of Washington, En Banc.
November 9, 2006.
*916 Todd Christopher Hayes, Thomas Fitzgerald Ahearne, Foster Pepper Shefelman PLLC, Seattle, for Petitioners.
Eileen I. McKillop, Oles Morrison Rinker & Baker LLP, Seattle, Heather Dawn Shand Perkins, Shand Perkins & Wall PLLC, Mount Vernon, for Respondents.
MADSEN, J.
¶ 1 Petitioner Ballard Square Condominium Owners Association (Association) sued Dynasty Construction Company (Dynasty), the developer and builder of a condominium purchased by members of the Association, claiming that Dynasty breached the homeowners' purchase and sale contracts. At the time the suit was brought, Dynasty was a dissolved corporation. The trial court granted summary judgment in favor of Dynasty, reasoning that suit was barred due to Dynasty's dissolution. The Court of Appeals affirmed. We conclude that under the plain language of former RCW 23B.14.050(2)(e) (1989) as it existed when the Association commenced this suit, postdissolution claims could be brought against a dissolved corporation, subject to the relevant statute of limitations for the type of claim asserted.
¶ 2 However, a 2006 amendment to former RCW 23B.14.340 (1995) applies retroactively and bars this suit.[1] Accordingly, although we disagree with the Court of Appeals' reasoning, we affirm its decision.

FACTS
¶ 3 Ballard Square is a 20-unit condominium in Seattle that was developed, built, and sold by Dynasty. The first condominium unit was sold in May 1992 and the project was completed in December 1992. The Association is a nonprofit corporation comprised of homeowners who own the condominium units and common elements at Ballard Square. The homeowners' individual purchase and sale agreements with Dynasty provided that Dynasty would build each homeowner's unit and the entire Ballard Square project would be "substantially completed in accordance with [the] plans and specifications." See Clerk's Papers (CP) at 246. Soon after the last of these contracts was executed, Dynasty was administratively dissolved effective October 1995.
¶ 4 In November and December 1996, the Association asserts, homeowners began to notice leaks in the above-ground walls of the condominium. The Association says that although some homeowners had found leaks prior to this time in the subterranean garage and the roof, and noticed some window condensation, it is not suing for damage to these components of the condominium, which, the Association maintains, is unrelated to damage to the above-ground structure resulting from defects in the exterior walls and stucco system. Dynasty contends, on the other hand, that homeowners complained to the Association in mid-July 1993 about leaking walls and roof problems, that in December 1993 the Association presented Dynasty with a common element claim for leak repairs, and that in early 1995 the Association was still receiving complaints from the homeowners about leaking walls, roof problems, and cracked plasterboard.
¶ 5 In early 1997, the Association filed a claim with its property insurer. The insurer's *917 investigators found water leaking through the siding but under the applicable policy provisions paid only for repair of that part of the building in an imminent state of collapse. The investigation disclosed additional water damage, however, and the homeowners hired an architect to investigate. He concluded that severe water damage resulted from Dynasty's failure to comply with applicable building laws and its failure to follow sound construction standards and its own plans and specifications. Estimated costs of repair exceed $1.4 million.
¶ 6 On October 8, 2002, the Association brought this breach of contract action.[2] In December 2003, Dynasty moved for summary judgment, alleging that suit was barred by (1) chapter 23B.14 RCW, the corporate dissolution statutes; (2) RCW 4.16.326(1)(g), providing an affirmative defense to suits on written construction contracts if not brought within six years of substantial completion; and (3) RCW 64.34.452(1), a statute of limitations in the Washington Condominium Act. Dynasty also urged that summary judgment should be granted because the Association itself did not have a contract with Dynasty.[3] The trial court granted the motion for summary judgment on the grounds that suit was barred due to Dynasty's dissolution and the statute of limitations had expired.[4] The Court of Appeals affirmed, reasoning that postdissolution suits against a corporation are not addressed by chapter 23B.14 RCW and therefore the common law applies. At common law all suits against a dissolved corporation are terminated once the corporation has wound up its affairs. Ballard Square Condo. Owners Ass'n v. Dynasty Constr. Co., 126 Wash.App. 285, 108 P.3d 818, review granted, 155 Wash.2d 1024, 126 P.3d 820 (2005).

ANALYSIS
¶ 7 Review of a grant of summary judgment is de novo. Korslund v. Dyncorp Tri-Cities Servs., Inc., 156 Wash.2d 168, 177, ¶ 12, 125 P.3d 119 (2005). Summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Korslund, 156 Wash.2d at 177, 125 P.3d 119. Facts and reasonable inferences from the facts are construed most favorably to the nonmoving party. Id. Summary judgment is appropriate if reasonable minds could reach only one conclusion from the evidence presented. Id.
¶ 8 The Association maintains that statutes in chapter 23B.14 RCW supplant the common law rule that causes of action terminate upon the dissolution of a corporation and authorize a postdissolution suit against a dissolved corporation. Dynasty maintains that the Court of Appeals correctly held that a postdissolution suit against a dissolved corporation can be brought only during the period when the corporation is winding up and liquidating its business and affairs.
¶ 9 At common law, when a corporation dissolved it ceased to exist for all purposes and therefore could not sue or be sued. 16A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 8144 (rev.vol.2003); see Bortle v. Osborne, 155 Wash. 585, 597, 285 P. 425 (1930). The common law rule has been modified by state legislatures, most of which have enacted statutes permitting corporations to sue and be sued as part of their winding up activities, and all of which have enacted statutes that, apart from the winding up process, permit suits by and against corporations for a limited time period. Id. The latter type of statute is generally known as a survival statute. Id.
*918 ¶ 10 The Washington legislature enacted a survival statute in 1965 as part of the Washington Business Corporation Act, former Title 23A RCW. Washington's survival statute was virtually identical to section 98 of the 1959 Model Business Corporation Act, ABA-ALI Model Bus. Corp. Act § 98 (1959). Former RCW 23A.28.250, Laws of 1965, ch. 53, § 108 (effective July 1, 1967). The survival statute, like section 98, provided that a corporation's dissolution did not "take away" or "impair" lawsuits based on claims that existed prior to dissolution, provided the plaintiff sued within two years. Former RCW 23A.28.250.
¶ 11 When former Title 23A RCW was replaced in 1989 by Title 23B RCW, the legislature included a new survival statute that in relevant part mirrors former RCW 23A.28.250. RCW 23B.14.340 then provided that dissolution of a corporation "shall not take away or impair any remedy available against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if . . . commenced within two years . . . of such dissolution." (Emphasis added.) Although Dynasty argued to the Court of Appeals that this version of the statute precludes the Association's suit, that court correctly held the statute did not apply by its plain language because the Association's claim did not exist prior to dissolution. Ballard Square, 126 Wash.App. at 291, ¶ 9, 108 P.3d 818; accord Smith v. Sea Ventures, Inc., 93 Wash.App. 613, 618-19, 969 P.2d 1090 (1999); D. Gilbert Friedlander & P. Anthony Lannie, Post-Dissolution Liabilities of Shareholders and Directors for Claims Against Dissolved Corporations, 31 Vand. L.Rev. 1363, 1370 (1978) (the model survival of remedies statute applies by its own terms to predissolution claims only). As the Court of Appeals observed, to hold that the statute applies to postdissolution claims would render the "prior to" language meaningless, in contravention of the principle that a court may not construe a statute in a way that renders statutory language meaningless or superfluous. Ballard Square, 126 Wash. App. at 291-92 n. 22, 108 P.3d 818; see Lakemont Ridge Homeowners Ass'n v. Lakemont Ridge Ltd. P'ship, 156 Wash.2d 696, 698-99, ¶ 5, 131 P.3d 905 (2006); State v. Tandecki, 153 Wash.2d 842, 848, ¶ 13, 109 P.3d 398 (2005).
¶ 12 Dynasty has abandoned the argument that RCW 23B.14.340 bars the Association's suit. Now Dynasty argues that the statutes do not address postdissolution claims, and therefore the common law controls as the Court of Appeals held. However, the Association correctly maintains that the statutes in the Washington Business Corporation Act have replaced the common law rule in its entirety. The statutory scheme shows the legislature's intent that claims arising after dissolution are not absolutely barred, unlike the harsh common law rule.
¶ 13 The enactment of chapter 23B.14 RCW included RCW 23B.14.050(2)(e), which showed the legislature's intent to cut any remaining ties to the common law rule that all claims against a corporation died upon dissolution of the corporation. RCW 23B.14.050, as it existed when this action was commenced, stated in its entirety:
(1) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:
(a) Collecting its assets;
(b) Disposing of its properties that will not be distributed in kind to its shareholders;
(c) Discharging or making provision for discharging its liabilities;
(d) Distributing its remaining property among its shareholders according to their interests; and
(e) Doing every other act necessary to wind up and liquidate its business and affairs.
(2) Dissolution of a corporation does not:
(a) Transfer title to the corporation's property;
(b) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;

*919 (c) Subject its directors or officers to standards of conduct different from those prescribed in chapter 23B.08 RCW;
(d) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;
(e) Prevent commencement of a proceeding by or against the corporation in its corporate name;
(f) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or
(g) Terminate the authority of the registered agent of the corporation.
As the Association argues, RCW 23B.14.050(2)(e) on its face states that dissolution of a corporation does not bar suits against the corporation, and makes no distinction between predissolution and postdissolution claims. Dynasty contends, however, that RCW 23B.14.050(2)(e) is limited by section (1) of the statute to matters related to winding up a corporation's affairs, and therefore RCW 23B.14.050(2)(e) permits suits only insofar as they are part of the winding up process. The Court of Appeals agreed that RCW 23B.14.050 concerns only winding up. Ballard Square, 126 Wash.App. at 295-96, ¶ 16, 108 P.3d 818.
¶ 14 We agree that the language of subsection (2)(e) is not to be read in isolation. An appellate court reviews questions of statutory construction de novo. State v. Roggenkamp, 153 Wash.2d 614, 621, ¶ 9, 106 P.3d 196 (2005). The examination begins with the language of the statute and related statutes to determine whether plain statutory language shows the intended meaning of the statute in question. Rest. Dev., Inc. v. Cananwill, Inc., 150 Wash.2d 674, 682, 80 P.3d 598 (2003); Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002). If this examination leads to a plain meaning, that is the end of the inquiry. If, however, the statutory language is amenable to more than one reasonable interpretation, a court may then resort to legislative history, principles of statutory construction, and relevant case law to resolve the ambiguity and ascertain the meaning of the statute. Rest. Dev., 150 Wash.2d at 682, 80 P.3d 598.
¶ 15 Section (1) of RCW 23B.14.050 begins by stating that "[a] dissolved corporation continues its corporate existence" but then expressly limits this corporate existence to carrying on business that is "appropriate to wind up and liquidate [the corporation's] business and affairs." RCW 23B.14.050(1). The first section then lists actions appropriately falling within this limitation, such as disposing of property and discharging liabilities.
¶ 16 Section (2), however, does not mention winding up, nor does any part of the statute describe or refer collectively to events and actions listed in both sections (1) and (2) as winding up. Instead, section (2) began with the phrase "Dissolution of a corporation does not. . . ." This introductory phrase was then followed by an enumeration of events and actions that were not brought about and not barred by dissolution, one of which was that "Dissolution of a corporation does not . . . [p]revent commencement of a proceeding by or against the corporation in its corporate name." RCW 23B.14.050(2)(e). In short, the statute describes in general the consequences of dissolution. The first section explains the limited business role of a corporation upon dissolution, i.e., the carrying on of limited business activities necessary to wind up and liquidate. The second section identifies things that dissolution did not alter or bring about.
¶ 17 The plain language of subsection (2)(e) permitted any suit to be brought by or against the corporation regardless of dissolution, and the plain language of both sections shows that the introductory language in section (1) limiting activities to winding up and liquidating does not limit subsection (2)(e).
¶ 18 As indicated, related statutes are relevant and may help show the plain meaning of the provision at issue. Two other statutes in the chapter pertained to lawsuits against a dissolved corporation. The first of these is former RCW 23B.14.340, discussed above. As explained, this statute required that claims existing prior to dissolution be brought within two years. The second is *920 RCW 23B.14.060, which sets out requirements that must be met for a corporation to dispose of certain known claims against it within a shortened time period.[5] This statute also said, at the time this suit was commenced, that "[f]or purposes of this section, `claim' does not include a contingent liability or a claim based on an event occurring after the effective date of dissolution." Former RCW 23B.14.060(4) (1989). Both of these statutes limited suits within the purview of RCW 23B.14.050(2)(e), because they provided a two-year limitations period for claims existing prior to dissolution and an alternative scheme for disposing of certain known claims against the corporation, other than contingent liabilities and claims based on events occurring after the effective date of dissolution. However, neither RCW 23B.14.340 nor RCW 23B.14.060 concerned postdissolution suits like the breach of contract claim that the Association seeks to bring and neither limited the language of RCW 23B.14.050(2)(e) insofar as such claims are concerned.[6]
¶ 19 The language of RCW 23B.14.050(2)(e), read together with other statutes in chapter 23B.14 RCW relating to suits against a dissolved corporation, plainly allowed a postdissolution suit against a dissolved corporation. Section (2) on its face permitted such suits, and there was no limitation in RCW 23B.14.050 or in any other statute in the chapter that touched on suits against a dissolved corporation.[7] Rather, the statute of limitations applicable to the particular cause of action applied. See 16A Fletcher, supra, § 8144. Thus, for example, in the case of a claim of breach of a written contract, as here, the plaintiff had, under RCW 4.16.040(1), six years following accrual of the cause of action in which to bring its claim.
¶ 20 In summary, under the statutes in chapter 23B.14 RCW applicable at the time this action was commenced, a postdissolution claim against a dissolved corporation was *921 authorized under former RCW 23B.14.050(2)(e).
¶ 21 However, in 2006, the legislature amended chapter 23B.14 RCW, including RCW 23B.14.340.[8] RCW 23B.14.340 as amended by Laws of 2006, ch. 52, § 17 provides:
The dissolution of a corporation either (1) by the filing with the secretary of state of its articles of dissolution, (2) by administrative dissolution by the secretary of state, (3) by a decree of court, or (4) by expiration of its period of duration shall not take away or impair any remedy available against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution or arising thereafter, unless action or other proceeding thereon is not commenced within two years after the effective date of any dissolution that was effective prior to June 7, 2006 or within three years after the effective date of any dissolution that is effective on or after June 7, 2006. Any such action or proceeding against the corporation may be defended by the corporation in its corporate name.
On its face the amended statute requires that a postdissolution cause of action be commenced within two years of dissolution if dissolution occurred prior to the June 7, 2006, effective date of the amendments. Here, dissolution occurred in 1995, long before the effective date of the amendments. The Association brought suit in 2002, well over two years after dissolution. By its plain language, RCW 23B.14.340 as amended bars the Association's suit.
¶ 22 The Association argues, however, that when applied to actions that accrued prior to enactment, a new limitations period runs from the effective date of the new statute. The Association also maintains that a statute of limitations cannot be applied retroactively to terminate an action that has already been commenced. Neither of these principles applies under the facts here, however.
¶ 23 The general rule, that as to preexisting actions a new limitations period runs from the date of its enactment, has an important qualifier. "[T]he limitation of the new statute, as applied to pre-existing causes of action, commences when the action is first subjected to the operation of the statute, unless the legislature has otherwise provided." Hanford v. King County, 112 Wash. 659, 662, 192 P. 1013 (1920) (emphasis added); accord, e.g., O'Donoghue v. State, 66 Wash.2d 787, 791-92, 405 P.2d 258 (1965); Earle v. Froedtert Grain & Malting Co., 197 Wash. 341, 344, 346, 85 P.2d 264 (1938).
¶ 24 Here, the statute as amended provides that with regard to actions against corporations that dissolved before the amendment's effective date, a two year limitations period applies. The statute thus clearly shows legislative intent that it applies to actions arising before its effective date.
¶ 25 Nor does it matter that this suit was commenced before enactment of the amendments to RCW 23B.14.340. The Association relies upon Shaurette v. Capitol Erecting Co., 23 Wis.2d 538, 128 N.W.2d 34, 39 (1964), and similar cases, for the proposition that a new limitation period can never extinguish a lawsuit. However, again there is qualifier.
¶ 26 In 1000 Virginia Limited Partnership v. Vertecs Corporation, No. 77362-9 (Wash. Nov. 9, 2006) (consolidated with Lombardi v. JTE Construction, Inc., No. 77846-9), ___ Wash.2d ___, 146 P.3d 423, we discussed the basic rules respecting prospectively and retroactivity of new enactments in general. We observed that an amendment to a statute may be retroactively applied if the legislature intends that it apply retroactively and retroactive application does not impair a constitutional right. 1000 Virginia, No. 77362-9, slip op. at 19-20, ___ Wash.2d at ___-___, 146 P.3d 423; McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs., 142 Wash.2d 316, 324, 12 P.3d 144 (2000). A statute will also apply retroactively if it is curative or remedial. 1000 Virginia, No. 77362-9 slip op. at 19-20, ___ Wash.2d at ___-___, 146 P.3d 423; McGee, 142 Wash.2d at 324, 12 P.3d 144. "`A statute is remedial when it relates *922 to practice, procedure, or remedies and does not affect a substantive or vested right.'" 1000 Virginia, No. 77362-9, slip op. at 23, ___ Wash.2d at ___, 146 P.3d 423- (quoting Miebach v. Colasurdo, 102 Wash.2d 170, 181, 685 P.2d 1074 (1984)).
¶ 27 Thus, if the legislature intends that a statute apply retroactively, it will be applied retroactively unless it impairs a constitutional or vested right. A number of the cases that the Association cites, including Shaurette, involve tort or contract actions. As this court has recognized, an accrued cause of action is a vested right when it "`springs from contract or from the principles of the common law.'" Robinson v. McHugh, 158 Wash. 157, 163, 291 P. 330 (1930) (emphasis omitted) (quoting Pritchard v. Norton, 106 U.S. (16 Otto) 124, 1 S.Ct. 102, 27 L.Ed. 104 (1882)). But, in contrast, a cause of action that exists only by virtue of a statute is not a vested right and it can be retroactively abolished by the legislature. West v. Zeibell, 87 Wash.2d 198, 202, 550 P.2d 522 (1976); Haddenham v. State, 87 Wash.2d 145, 149, 550 P.2d 9 (1976); Sparkman & McLean Co. v. Govan Inv. Trust, 78 Wash.2d 584, 586-87, 478 P.2d 232 (1970); Hansen v. W. Coast Wholesale Drug Co., 47 Wash.2d 825, 826-27, 289 P.2d 718 (1955); Robinson, 158 Wash. at 163-64, 291 P. 330. Of particular importance here, the legislature may do so even if the lawsuit is pending. E.g., Sparkman, 78 Wash.2d at 586-87, 478 P.2d 232 (defendant's right to a usury defense provided by statute was not a vested right and the legislature could extinguish the right to the defense by an enactment passed after trial had occurred and prior to a decision on appeal); Hansen, 47 Wash.2d at 826-27, 289 P.2d 718 (plaintiff's right to bring a tort action created by statute was not a vested right prior to a final judgment and the legislature could abolish the cause of action and divest the plaintiff of the action by an enactment passed while the case was pending on appeal). Just as the legislature can divest a plaintiff of a statutory claim after suit is filed, it follows that it can shorten the time period for bringing a statutory claim and so terminate a plaintiff's action without impairing any vested right.
¶ 28 In 1000 Virginia, we held that RCW 4.16.326(1)(g) does not apply retroactively.[9] We found no basis for departing from the general rule that newly enacted statutes and amendments to statutes apply prospectively. Here, in contrast, there is no question that the amendments to RCW 23B.14.340 on their face show clear legislative intent that the statute apply retroactively. Further, and of critical significance here, the amendments do not affect any vested right. At common law, suits against a corporation terminated upon dissolution of the corporation, as mentioned. A postdissolution claim against a corporation therefore exists only as a matter of legislative enactment.
¶ 29 The Association maintains, however, that its breach of contract action "arose under the common law" and thus it falls within the rule that newly enacted limitations periods cannot defeat actions that have already been commenced. Court Requested Suppl. Br. of Pet'r at 9 n. 17. We disagree. In Haddenham, the plaintiffs brought a tort action against the State. The court observed that prior to the legislative abolition of sovereign immunity, tort claimants had no right to sue the State, and that "[t]he plaintiffs' right to sue the state for the state's tortious conduct is therefore a matter of legislative grace." Haddenham, 87 Wash.2d at 149, 550 P.2d 9. Accordingly, when the State withdrew its consent to be sued for the particular injury at issue, the "abolition by the legislature of an accrued cause of action [did] not violate any constitutional rights of [the] plaintiffs" because the cause of action allowed *923 by statute was not vested until reduced to a final judgment. Id.
¶ 30 As explained, the right to sue a dissolved corporation did not exist at common law; instead, the right exists by virtue of statutes in chapter 23B.14 RCW, i.e., the right exists as a matter of "legislative grace." Accordingly, and by analogy to Haddenham, the Association's cause of action is not a vested right regardless of the fact that the Association alleges breach of contract.
¶ 31 We conclude that the Association's postdissolution claim falls within the rule that "[a]bolition of a statutory cause of action does not impair any vested right." 1000 Virginia, No. 77362-9, slip op. at 23, ___ Wash.2d at ___, 146 P.3d 423 (citing West, 87 Wash.2d at 202, 550 P.2d 522; Haddenham, 87 Wash.2d at 149, 550 P.2d 9). Accordingly, RCW 23B.14.340, as amended in 2006, bars the Association's suit.

CONCLUSION
¶ 32 Under former chapter 23B.14 RCW, as it existed when the Association commenced this action, a postdissolution action could be maintained against a dissolved corporation provided it was commenced within the statute of limitations applicable to the particular cause of action asserted. However, in 2006 the legislature amended RCW 23B.14.340 to provide that a postdissolution action against a dissolved corporation that dissolved prior to the effective date of the amendments must be commenced within two years of dissolution. These amendments apply retroactively and bar the Association's suit.
We concur: Chief Justice GERRY L. ALEXANDER, Justice CHARLES W. JOHNSON, Justice BOBBE J. BRIDGE, Justice TOM CHAMBERS, Justice SUSAN OWENS, Justice MARY E. FAIRHURST.
J.M. JOHNSON, J. (concurring).
¶ 33 I agree that the 2006 amendment to RCW 23B.14.340 applies and bars the Ballard Square Condominium Owners Association's (Association) suit brought 7 years after dissolution of the corporation (and 10 years after project completion). I write separately because the majority incorrectly assumes that prior to this amendment such a suit could have continued. However, at the time the Association filed suit, our law, and chapter 23B.14 RCW, provided no cause of action against a dissolved corporation for unknown claims (those based on events after dissolution). Thus, the Association's suit against Dynasty is barred under either statutory scheme.

I. Pre-2006 Amendment Analysis
¶ 34 At early common law, all causes of action against a corporation terminated upon dissolution of the corporation; a corporation was viewed as a fictional person, and dissolution as death. The debts of the terminated corporation were extinguished, its real property reverted to the grantor, and its personal property escheated. Bortle v. Osborne, 155 Wash. 585, 597, 285 P. 425 (1930); see also Theis v. Spokane Falls Gaslight Co., 34 Wash. 23, 29-30, 74 P. 1004 (1904). Common law largely controlled the law of corporations in Washington until statutory enactments changed that law.
¶ 35 In 1965, the Washington legislature adopted the Washington Business Corporations Act (WBCA), Laws of 1965, ch. 53, which was based largely on the national Model Business Corporation Act.
¶ 36 In 1984, the national Model Business Corporation Act was revised in response to extensive comment throughout the country. In 1989, the Washington legislature substantially revised the WBCA, Laws of 1989, ch. 165, to incorporate many provisions of the national 1984 Revised Model Business Corporation Act (Model Act).
¶ 37 A statute abrogates the common law if the provisions of the statute are so inconsistent with and repugnant to the common law that both cannot simultaneously be in force. State ex rel. Madden v. Pub. Util. Dist., 83 Wash.2d 219, 222, 517 P.2d 585 (1973). "It is a general rule of interpretation to assume that the legislature was aware of the established common-law rules applicable to the subject matter of the statute when it was enacted." Id. "A statute which is clearly designed as a substitute for the prior common *924 law must be given effect." Id. at 221, 517 P.2d 585. However, "`[a]bsent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions.'" Ballard Sq. Condo. v. Dynasty Constr., 126 Wash.App. 285, 295-96 & n. 39, 108 P.3d 818 (2005) (quoting In re Marriage of Williams, 115 Wash.2d 202, 208, 796 P.2d 421 (1990)).
¶ 38 Here, we must determine to what extent Washington statutory law had supplanted the common law notion that a corporation died at dissolution. Thus, we must analyze the pre-2006 statutory scheme and its underlying legislative intent vis-à-vis the common law.
¶ 39 Statutory interpretation is a question of law that this court reviews de novo. Philippides v. Bernard, 151 Wash.2d 376, 383, 88 P.3d 939 (2004). "The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent and purpose." In re Parentage of J.M.K., 155 Wash.2d 374, 387, 119 P.3d 840 (2005). This goal may be achieved by considering the statute as a whole, giving effect to all of the statutory language, and using related statutes to help identify the legislative intent underlying the provision at issue. Id. If, after this inquiry, a statute might still be accorded more than one reasonable meaning, the statute is ambiguous and courts may resort to aids to construction, including legislative history. Id.; Advanced Silicon v. Grant County, 156 Wash.2d 84, 90, 124 P.3d 294 (2005). Courts must "`avoid readings of statutes that result in unlikely, absurd, or strained consequences.'" Advanced Silicon, 156 Wash.2d at 90, 124 P.3d 294 (quoting Glaubach v. Regence BlueShield, 149 Wash.2d 827, 833, 74 P.3d 115 (2003)).
A. Former RCW 23B.14.050 (1989)Model Act § 14.05
¶ 40 Former RCW 23B.14.050, titled "Effect of dissolution," provides:
(1) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:
(a) Collecting its assets;
(b) Disposing of its properties that will not be distributed in kind to its shareholders;
(c) Discharging or making provision for discharging its liabilities;
(d) Distributing its remaining property among its shareholders according to their interests; and
(e) Doing every other act necessary to wind up and liquidate its business and affairs.
(2) Dissolution of a corporation does not:

(a) Transfer title to the corporation's property;
(b) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;
(c) Subject its directors or officers to standards of conduct different from those prescribed in chapter 23B.08 RCW;
(d) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;
(e) Prevent commencement of a proceeding by or against the corporation in its corporate name;

(f) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or
(g) Terminate the authority of the registered agent of the corporation.
(Emphasis added.)
¶ 41 This statute is identical to § 14.05 of the national Model Act. Revised Model Bus. Corp. Act § 14.05 (1985) (RMBCA). The Washington legislature did not officially adopt the comments to the 1984 Model Act, but the comments were published in the Senate Journal. Thus, this court may use the comments as persuasive authority. The comments provide:
Proposed subsection 14.05(a) [former RCW 23B.14.050(1)] I provides that dissolution does not terminate the corporate existence *925 but simply requires the corporation thereafter to devote itself to winding up its affairs and liquidating its assets; after dissolution, the corporation may not carry on its business except as may be appropriate for winding-up.

The Proposed Act uses the term "dissolution" in the specialized sense described above and not to describe the final step in the liquidation of the corporate business. This is made clear by Proposed subsection 14.05(b) [former RCW 23B.14.050(2)], which provides that chapter 14 dissolution does not have any of the characteristics of common law dissolution, which treated corporate dissolution as analogous to the death of a natural person and abated lawsuits, vested equitable title to corporate property in the shareholders, imposed the fiduciary duty of trustees on directors who had custody of corporate assets, and revoked the authority of the registered agent. Proposed subsection 14.05(b) expressly reverses all of these common law attributes of dissolution and makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected by dissolution and that suits by or against the corporation are not affected in any way.
Senate Journal, 51st Leg., Reg. Sess., app. at 3095 (Wash.1989) (emphasis added). Essentially, the term "dissolution" as used in RCW 23B.14.050, subsections (1) and (2), refers to the winding up period.
¶ 42 Dynasty correctly points out that RCW 23B.14.050 is limited to the context of winding up and thus only establishes how the corporate existence continues during that winding up process. Resp'ts Suppl. Br. at 8-9. Accordingly, Dynasty maintains, the provision allows commencement of actions only during the winding up period. Id. Dynasty also argues that because RCW 23B.14.050 does not address or authorize actions commenced after the wind up period, the common law has not been abrogated or supplanted regarding such post-dissolution claims. Resp'ts Suppl. Br. at 8-9.
¶ 43 In contrast, the Association argues that the plain language of RCW 23B.14.050(2)(e) allows suits against dissolved corporations: "`[d]issolution of a corporation does not . . . [p]revent commencement of a proceeding . . . against a corporation.'" Pet'rs Suppl. Br. at 8 (quoting RCW 23B.14.050(2)(e)). The majority erroneously agrees with the Association's broad analysis. Majority at 916. I conclude the statutory changes were more limited.
¶ 44 All of the subsections of former RCW 23B.14.050(2) refer to acts or events that continue during winding up, but cease to occur following wind up. For example, a corporation must liquidate and discharge liabilities during the winding up period. Likewise, quorum and voting requirements continue during winding up but terminate when the winding up period is over. Logically, subsection (2)(e) must adhere to this same pattern; commencement of actions may continue against the corporation during the winding up period but not afterward.
¶ 45 The plain language of former RCW 23B.14.050 abrogates the common law rule of death at dissolution in favor of allowing (requiring) corporations a period to wind up. As noted above, at common law, the debts of the corporation were extinguished at dissolution, its real property reverted to the grantor, and its personal property escheated. Bortle, 155 Wash. at 597, 285 P. 425. Former RCW 23B.14.050(2) provides, among other things, that dissolution does not immediately transfer title or prevent transfer of shares. Because former RCW 23B.14.050 continues the existence of the corporation through the winding up period, a corporation no longer dies immediately at dissolution. Therefore, the common law has been abrogated, but only to the extent it is contradicted by statute. However, those aspects of the common law not plainly contradicted by former RCW 23B.14.050 remain in force. Ballard Sq. Condo., 126 Wash.App. at 290, 295, 108 P.3d 818; see also State ex rel. Madden, 83 Wash.2d at 222, 517 P.2d 585; In re Marriage of Williams, 115 Wash.2d at 208, 796 P.2d 421.
¶ 46 Thus, former RCW 23B.14.050 authorizes only actions against dissolved corporations brought during the winding up process; it does not allow for claims against corporations that have completed the process of *926 winding up and finally dissolved. Because Dynasty had completed the winding up process long before the Association filed suit in October 2002, the Association's suit was not authorized by former RCW 23B.14.050.[1] That the Association remained subject to the common law bar on suits against dissolved corporations at the time it filed its suit is further confirmed by an examination of two additional provisions of chapter 23B.14 RCW: RCW 23B.14.340 and RCW 23B.14.060.
B. Former RCW 23B.14.340 (1989)
¶ 47 Former RCW 23B.14.340 (formerly RCW 23A.28.250), titled "Survival of remedy after dissolution," provides:
The dissolution of a corporation . . . shall not take away or impair any remedy available against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding against the corporation may be defended by the corporation in its corporate name.
(Emphasis added.)
¶ 48 Dynasty and the Association agree that the plain language of this provision indicates that the legislature intended for the statute to apply only to claims existing prior to corporate dissolution. However, Dynasty further argues that this provision precludes the Association's claim because it arose from acts prior to dissolution. Resp'ts Ct. Req. Suppl. Br. at 12-13. In contrast, the Association argues that its claim is implicitly authorized by this provision because its claim is one arising after dissolution.[2] Pet'rs Suppl. Br. at 7-8.
¶ 49 The original version of this statute was enacted in 1965 as part of the WBCA, discussed above. Laws of 1965, ch. 53, § 108. The language of the original statute is substantially similar to the present statute and includes the language at issue here "prior to such dissolution." Id. The plain language of the statute obviates the need for legislative history in this instance.
¶ 50 "A fundamental canon of construction holds a statute should not be interpreted so as to render one part inoperative." Davis v. Dep't of Licensing, 137 Wash.2d 957, 969, 977 P.2d 554 (1999). A court should presume the legislature does not include unnecessary language when it enacts legislation. McGinnis v. State, 152 Wash.2d 639, 645, 99 P.3d 1240 (2004).
¶ 51 The plain language of former RCW 23B.14.340 indicates that it only authorized claims existing "prior to" dissolution. Ballard Sq. Condo., 126 Wash.App. at 291, 108 P.3d 818. To interpret the statute as applying to claims after dissolution would render the "prior to" language meaningless. Id.; majority at 918. The statute, by its plain meaning, did not authorize claims that accrued after dissolution. Id.; majority at 918.
¶ 52 The Association then argues that the language in former RCW 23B.14.340 neither barred nor allowed a post-dissolution claim; it is silent on this point. As argued by the Association, the majority interprets this silence, together with its erroneous view of *927 RCW 23B.14.050(2)(e), to conclude that "the statutes in the Washington Business Corporation Act have replaced the common law rule in its entirety." Majority at 918 (emphasis added). Yet, as noted above, RCW 23B.14.050(2)(e) was actually intended only to supplant the common law rule of corporate death upon dissolution during the period of the winding up process. During that period, prior claims (and only prior claims) may be brought within two years.
¶ 53 Abrogation of the common law requires irreparable inconsistency. See State ex rel. Madden, 83 Wash.2d at 222, 517 P.2d 585. Such inconsistency is not presented by mere silence, and therefore the correct inference to be drawn from the statutory language is that, under the pre-2006 version of chapter 23B.14 RCW, the legislature did not modify the common law bar for post-dissolution claims. Ballard Sq. Condo., 126 Wash. App. at 287, 108 P.3d 818. Neither former RCW 23B.14.340 nor RCW 23B.14.050(2)(e) provides authorization for the Association's suit against Dynasty. An additional provision of chapter 23B.14 RCW, and particularly the legislative history surrounding its enactment, confirms that there was no cause of action for post-dissolution claims, like the claim here, under the pre-2006 statutory scheme.
C. Former RCW 23B.14.060 (1989)Model Act § 14.06
¶ 54 In addition to the statutes discussed above, the national Model Act contained two other sections addressing whether suits may be brought against dissolving or dissolved corporations. One section was adopted in Washington, the other was not. Specifically, the Model Act contained § 14.06, "Known claims against a dissolved corporation," and § 14.07, "Unknown claims against dissolved a corporation." RMBCA § 14.06, 14.07. Notably, the Washington legislature adopted only the "known claims" section, § 14.06, codified as former RCW 23B.14.060 (1989).
¶ 55 Former RCW 23B.14.060, titled "Known claims against a dissolved corporation," provides, in pertinent part:
(1) A dissolved corporation may dispose of the known claims against it by following the procedure described in this section.
(2) The dissolved corporation shall notify its known claimants in writing of the dissolution at any time after its effective date.
. . . .
(3) A claim against the dissolved corporation is barred. . . . :
(a) If a claimant who was given written notice under subsection (2) of this section does not deliver the claim to the dissolved corporation by the deadline; or
(b) If a claimant whose claim was rejected by the dissolved corporation does not commence a proceeding to enforce the claim within ninety days from the effective date of the rejection notice.
(4) For purposes of this section, "claim" does not include a contingent liability or a claim based on an event occurring after the effective date of dissolution.
¶ 56 The legislature did not adopt the section of the Model Act entitled, "Unknown claims against a dissolved corporation," § 14.07. This section would have allowed claims based on events occurring after the effective date of dissolution as long as such claims were brought within five years' notice of dissolution. The rejected § 14.07 arguably would have filled a void left by "[e]arlier versions of the Model Act [that] did not recognize the serious problem created by possible claims that might arise long after the dissolution process was completed . . ." RMBCA § 14.07 cmt.
¶ 57 However, the Washington legislature chose not to adopt § 14.07. Ballard Condo., 126 Wash.App. at 293, 108 P.3d 818. The comment following § 14.06 sheds some light on why the legislature did not adopt § 14.07:
The [Corporate Act Revision Committee of the Washington State Bar Association] deferred possible adoption of RMA [Revised Model Act] section 14.07, which would have barred unknown claims after publication of notice. It was informed that the RMA drafters are studying the provision for possible revision. The Committee will reconsider RMA section 14.07 and *928 Proposed section 14.34 in view of those revisions.
Senate Journal, 51st Leg., Reg. Sess., app. at 3096 (Wash.1989).
¶ 58 The legislature specifically chose not to adopt the "unknown claims" section of the Model Act when it otherwise substantially adopted the Model Actincluding the sections pertaining to claims arising prior to dissolution and "known claims." This is an important and intentional omission, for it indicates that while the legislature specifically sought to allow known claims, it did not wish to establish an express cause of action for unknown (later discovered) claims. Ballard Sq. Condo., 126 Wash.App. at 295, 108 P.3d 818. Thus, RCW 23B.14.060 and its legislative history lend support to the conclusion that the legislature did not intend to alter the common law bar as to unknown, post-dissolution claims. In sum, analysis of former chapter 23B.14 RCW, particularly those provisions relevant to bringing suit against dissolved corporations, demonstrates that the Association could not bring its suit against Dynasty under either the former or current versions of that statutory scheme

II. Conclusion
¶ 59 Because prior to 2006 the legislature had not abrogated the common law bar on claims against corporations which arise post-dissolution, the Association had no cause of action when it initially filed suit against Dynasty. Likewise, under the current version of chapter 23B.14 RCW, the Association's claim is time barred. Therefore, I would hold that under both the current version of chapter 23B.14 RCW and prior corporations law of this state, the Association's claim and any similar "unknown" claim against dissolved corporations are barred.
We concur: Justice RICHARD B. SANDERS.
NOTES
[1] Senate Bill 6596, enacted by the 2006 legislature, significantly alters the statutory scheme regarding suits by and against a dissolved corporation. Laws of 2006, ch. 52. In order to respond to the parties' arguments this opinion first addresses chapter 23B.14 RCW, concerning dissolution of corporations, as it existed prior to the 2006 amendments. Then we turn to the effect of the 2006 amendments to RCW 23B.14.340 on the Association's suit.
[2] The Association's complaint asserted additional claims, but the Association withdrew these claims in response to Dynasty's motion for summary judgment.
[3] The Association states that it brought this suit on its own behalf and on behalf of the homeowners, as it is authorized to do although it has no contract itself with Dynasty. The Association adds that the unit owners have also assigned their claims to the Association. See CP at 201-22. These assignments were all made in December 2003.
[4] Dynasty filed a third party complaint against its stucco subcontractor. The trial court entered CR 54(b) findings and a final judgment dismissing plaintiff's claims against Dynasty and staying Dynasty's claims against the subcontractor pending the Association's appeal.
[5] Former RCW 23B.14.060 (1989) provided at the time this suit was commenced:

(1) A dissolved corporation may dispose of the known claims against it by following the procedure described in this section.
(2) The dissolved corporation shall notify its known claimants in writing of the dissolution at any time after its effective date. The written notice must:
(a) Describe information that must be included in a claim;
(b) Provide a mailing address where a claim may be sent;
(c) State the deadline, which may not be fewer than one hundred twenty days from the effective date of the written notice, by which the dissolved corporation must receive the claim; and
(d) State that the claim will be barred if not received by the deadline.
(3) A claim against the dissolved corporation is barred:
(a) If a claimant who was given written notice under subsection (2) of this section does not deliver the claim to the dissolved corporation by the deadline; or
(b) If a claimant whose claim was rejected by the dissolved corporation does not commence a proceeding to enforce the claim within ninety days from the effective date of the rejection notice.
(4) For purposes of this section, "claim" does not include a contingent liability or a claim based on an event occurring after the effective date of dissolution.
[6] The contract claim is not a claim that existed prior to Dynasty's dissolution, as noted, and it was not a "known claim" within the meaning of RCW 23B.14.060, as that statute existed when this suit was commenced.
[7] If we were to conclude that ambiguity did exist as to the meaning of RCW 23B.13.050(2)(e), and therefore looked to legislative history, our reading of the statute would be confirmed. The Official Comments to chapter 23B.14 RCW at the time of enactment explain that RCW 23B.14.050(2) makes clear that

chapter 14 dissolution does not have any of the characteristics of common law dissolution, which treated corporate dissolution as analogous to the death of a natural person and abated lawsuits, vested equitable title to corporate property in the shareholders, imposed the fiduciary duty of the trustees on the directors, who had custody of corporate assets, and revoked the authority of the registered agent. [RCW 23B.14.050(2)] expressly reverses all of these common law attributes of dissolution and makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected at dissolution and that suits by or against the corporation are not affected in any way.
Senate Journal, 51st Leg., Reg. Sess., app. at 3095 (Wash.1989) (emphasis added). Thus, with enactment of section (2) of RCW 23B.14.050, dissolution is governed entirely by statute, including suits by or against a dissolved corporation.
[8] The parties failed to bring these amendments to the court's attention. Therefore, we asked for additional briefing, which the parties have provided.
[9] Dynasty asks that we address this statute in the event we reverse the Court of Appeals on the issue whether a postdissolution suit is permitted under chapter 23B.14 RCW. In light of the amendment to RCW 23B.14.340, we do not reach the question whether RCW 4.16.326(1)(g) bars the Association's suit. However, our holding in 1000 Virginia that this statute does not apply retroactively nevertheless answers the question.

In light of our disposition of this case, we also do not reach other arguments advanced by Dynasty, i.e., that the four-year statute of limitations in RCW 64.34.452(1) bars this suit and that the Association lacks standing because it does not itself have a contract with Dynasty.
[1] The Association argues that Dynasty is still winding up because it is defending this lawsuit. However, it is illogical to conclude that a corporation that has otherwise liquidated its assets and ceased to exist is in the process of winding up merely because it must defend itself. To allow this result would mean that a corporation would be winding up forever at the will of plaintiffs' lawsuits.
[2] The Association argues that cases from other jurisdictions support its interpretation. However, my research indicates that cases from other jurisdictions, involving substantially similar statutes, are split as to whether the statute applies only to claims existing prior to dissolution or whether the "prior to" language operates to prohibit claims accrued after dissolution. Compare Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1450 (1st Cir.1995) (finding that the language at issueproviding a two-year survival period only for liabilities incurred "prior to dissolution" logically means that actions on liabilities incurred after dissolution do not survive at all, not even for the two-year wind-up period), with Gross v. Hougland, 712 F.2d 1034, 1040-41 (6th Cir.1983) (holding that Kentucky Revised Statutes Sec. 271A.515language virtually identical to RCW 23B.14.340did not affect the plaintiff's ability to bring the action in district court because it applies only to claims which arise prior to dissolution).